[S. F. No. 14784.   In Bank.—July 18, 1933.]

ALAMEDA COUNTY TITLE INSURANCE COMPANY (a Corporation), Respondent, v. JOSEPH PANELLA et al., Defendants; R. PERROTT, Appellant.

Molkenbuhr & Molkenbuhr and R. O. Bordner for Appellant.

McKee, Tasheira & Wahrhaftig and Henry H. Irwin for Respondent.

SEAWELL, J.—This action was brought to quiet title to three parcels of real property situate in the city of Piedmont, county of Alameda, this state. In addition to denying plaintiff's title, possession and right to possession, defendant R. Perrott set up an affirmative defense as to parcels 1 and 2. The court below sustained plaintiff's demurrer to said affirmative defense, and the cause went to trial on plaintiff's allegations of title and possession and defendant's general denial thereof, resulting in judgment for plaintiff as to all three parcels. On this appeal defendant does not attack the judgment as to parcel 3, but his sole contention is that the court erred in sustaining the demurrer to his affirmative defense as to parcels 1 and 2, and excluding evidence based thereon.

Appellant in said affirmative defense alleges that plaintiff title company claims title in fee as purchaser at a trustee's sale held under a deed of trust executed by appellant to said title company as beneficiary. He further alleges that said trustee's sale and the declaration of default in pursuance to which it was held were wrongful and fraudulent and in violation of an alleged oral agreement had between him and plaintiff at the time of execution of said deed of trust, in consequence of which he prays that it be decreed that plaintiff holds parcels 1 and 2 in trust for him to abide said alleged oral agreement. If proof of said oral agreement is inadmissible under the parol evidence rule, the

court below acted in accordance with law in sustaining plaintiff's demurrer to the affirmative defense.

It sufficiently appears from the allegations of the answer, which must be taken as true in passing on the demurrer thereto, that in March, 1927, defendant asserted a claim against plaintiff title company based on a policy of title insurance issued to him in December, 1926, on parcels 1 and 2 involved in the action herein. He had purchased said property, which included a number of lots, from one Ruth E. Mathews. The policy of title insurance showed Parkside Drive, upon which the lots fronted, to be a public street, when in fact the city of Piedmont had not accepted it as a public street and refused to improve it. In adjustment of this claim, defendant alleges, plaintiff title company, in July, 1927, agreed to acquire and pay the purchase price for an additional five-foot strip to meet the width requirements of the city of Piedmont for public streets. It is alleged that plaintiff did in fact acquire said strip, but the answer is silent as to whether the city of Piedmont thereafter accepted Parkside Drive as a public street.

Plaintiff company also "orally specifically agreed", following the allegations of the answer, to "take over and carry" the three existing encumbrances against the property, including a purchase money deed of trust executed by defendant to the seller, Ruth E. Mathews, and two deeds of trust, in the aggregate amount of $6,550, to which the property was subject when defendant acquired it. Plaintiff was "to take over and carry" said encumbrances until defendant was able to sell the property advantageously, at which time the proceeds of sale were to be apportioned to the encumbrances. It is not alleged whether plaintiff company made any payments to the holders of said encumbrances for the account of defendant between July, 1927, when the alleged oral agreement was made, and September 15, 1927. On that latter date, it is alleged, defendant and his wife executed a note and deed of trust for $4,350 in favor of plaintiff company, "in substitution" for the balance due upon two of the three deeds of trust to which the property was subject. It is to be inferred that plaintiff title company advanced funds with which said deeds of trust were paid and discharged, and took therefor the note of defendant and his wife, secured by deed of trust on said property. It does

not appear from the answer whether the remaining deed of trust lien, which was a first lien originally for $1750, had been paid before defendant's execution of the $4,350 note to plaintiff. As to said note for $4,350, defendant alleges that plaintiff "orally specifically agreed" at the time of execution thereof "to hold and carry" it until defendant should be able to sell the property advantageously, and that defendant and his wife relied on this agreement at the time they signed the note and deed of trust, and upon the faith of said oral agreement thereafter expended $3,300 in improvements on the property.

On June 20, 1930, it is alleged, plaintiff company, in violation of said oral agreement, wrongfully and fraudulently recorded notice of default and thereafter purchased the property at trustee's sale for $3,000.

The terms and conditions of the note and deed of trust for $4,350 do not appear upon the face of the answer either *in haec verba* or by description, but it is inferable from the answer as a whole that said note provided for certain payments which defendant has failed to make, and that plaintiff company became the purchaser at trustee's sale in full compliance with the provisions of the trust deed. ■

To defeat the title of plaintiff, defendant relies solely on the alleged oral agreement of plaintiff, made prior to and at the time of execution of the note and deed of trust and admittedly resting entirely in parol, "to hold and carry" said note and deed of trust. Defendant construes the agreement, as he alleges it, to mean that plaintiff company should receive no payments due by the terms of the note until he sold the property, and should have no right to exercise the power of sale conferred by the deed of trust. Plaintiff company's demurrer to the answer averred that the allegations of the agreement "to take over and hold" the note and deed of trust for $4,350 were uncertain, unintelligible and ambiguous. Aside from any question of uncertainty, the admission in evidence of the alleged oral agreement would be in direct violation of the parol evidence rule. ■

Fraud in the execution or inducement of a written contract may be shown, and revision of a written contract may be sought where mistake or imperfection of the writing is put in issue by the pleadings. (Sec. 1856, Code Civ. Proc.; secs. 1625, 1640, 3399, Civ. Code.) With these qualifications

the execution of a contract in writing supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument. (*Pacific States Securities Co.* v. *Steiner*, 192 Cal. 376 [220 Pac. 304]; *Thompson* v. *Langton*, 45 Cal. App. 415 [187 Pac. 970]; *College Nat. Bank* v. *Morrison*, 100 Cal. App. 403 [280 Pac. 218]; *Wright* v. *Shoenhair*, 100 Cal. App. 163 [280 Pac. 174]; *Rottman* v. *Hevener*, 54 Cal. App. 474 [202 Pac. 329]; *McArthur* v. *Johnson*, 216 Cal. 580 [15 Pac. (2d) 151]; *Murphy* v. *Craig*, 28 Fed. (2d) 963.)

If through mistake the note and deed of trust for $4,350 as executed failed to embody the true agreement of the parties, defendant should have put the mistake in issue by the pleadings and sought reformation. (*Harding* v. *Robinson*, 175 Cal. 534, 541 [166 Pac. 808]; sec. 1856, Code Civ. Proc.; sec. 3399, Civ. Code.) He has not adopted such a course. Nor does he charge plaintiff company with fraud. He makes no claim that he was induced not to read the instruments, or that he did not fully understand their import and perceive that they were at variance with the alleged oral agreement. He offers no suggestion as to why, if the oral agreement was made as alleged, it was not embodied in the note and deed of trust.

Defendant's main contention is that the answer states a good defense based on the doctrines of equitable estoppel and constructive trusts. He contends that in reliance on the alleged oral agreement of plaintiff company, made at and prior to execution of the note for $4,350, "to hold and carry" said note, he forbore to prosecute his claim on the policy of title insurance, and instead signed said note and thereafter expended $3,300 in improvements on the property. Defendant relies on cases holding that a party sought to be charged on an oral contract required by the statute of frauds to be in writing may be estopped to raise the defense of the statute where the other party, in reliance upon the oral agreement, has changed his position or prejudiced himself to such an extent that if the oral agreement were not enforced he would suffer irremediable injury. The leading California case on this subject is *Seymour* v. *Oelrichs*, 156 Cal. 782 [106 Pac. 88, 134 Am. St. Rep. 154], where plaintiff gave up his position as a captain of detectives on the San Francisco police force in reliance on an

oral promise of defendants to employ him for ten years at a stated salary, and served several years before he was discharged. The court held that defendants were estopped to plead the statute of frauds. (*Vogel* v. *Shaw*, 42 Wyo. 333 [294 Pac. 687, 75 A. L. R. 639, and note]; *Glass* v. *Hulbert*, 102 Mass. 24 [3 Am. Rep. 418].)

The statute of frauds and the parol evidence rule are distinct, although both aim to secure purity of evidence. In the statute of frauds cases there is no written contract which it is sought to vary and contradict by parol evidence. It is one thing to permit proof of an oral agreement required by the statute of frauds to be in writing on the basis of estoppel, and another to permit contradiction of a written contract to which the parties have reduced their agreement by proof of oral agreements made prior to and contemporaneously therewith. The oral negotiations are merged in the written contract, which is conclusive in the absence of a plea of actual fraud or mistake.

In *Union Mutual Life Ins. Co.* v. *Mowry*, 96 U. S. 544 [24 L. Ed. 674], a case frequently cited on this phase of the doctrine of estoppel, Mr. Justice Field declared: "But the doctrine has no place for application when the statement relates to rights depending upon contracts yet to be made, to which the person complaining is to be a party. He has it in his power in such cases to guard in advance against any consequences of a subsequent change of intention and conduct by the person with whom he is dealing. For compliance with arrangements respecting future transactions, parties must provide by stipulation in their agreements when reduced to writing. The doctrine carried to the extent for which the assured contends in this case would subvert the salutary rule, that the written contract must prevail over previous verbal arrangements, and open the door to all the evils which that rule was intended to prevent."

Defendant relies strongly on statements in certain of the cases cited by him to the effect that an estoppel may be based on an intended abandonment of an existing right, which statements, he contends, are precisely applicable to the facts alleged, in that he abandoned his right to proceed against the company for breach of the title insurance policy issued to him. This pronouncement has been made where it was contended that the representations to constitute the

basis of an estoppel must relate to existing facts rather than to a mere promise of future performance, and it has been held that an estoppel may arise as well where the representations relate to an intended abandonment of an existing right. These statements have reference to an intended abandonment of a right by the person sought to be estopped, and do not relate to a person in the position of defendant, who is the party relying on the estoppel. (*Banning* v. *Kreiter,* 153 Cal. 33 [94 Pac. 246]; *Rottman* v. *Hevener, supra; Faxton* v. *Faxton,* 28 Mich. 159; *Vogel* v. *Shaw, supra.*)

A case for application of this doctrine would be presented had plaintiff title company *subsequent* to execution of the note and deed of trust, by representations that it would waive payments due on the note pending sale of the property and forbear to exercise its right of sale for default, induced plaintiff to make valuable improvements and otherwise irrevocably alter his position. The promisor may be estopped to raise the defense that a written contract can be modified only by a contract in writing or an executed oral agreement, in like manner as he may be estopped to plead the statute of frauds upon an original contract required to be in writing. In this situation there is a *subsequent* oral agreement or representation. In the statute of frauds cases there is no written contract. But in the instant case an attempt is made to contradict a contract reduced to writing solely by alleged oral representations made prior to and contemporaneously with the written contract. The answer contains no allegations as to a *subsequent* waiver. There are absolutely no allegations as to what took place with reference to the note and deed of trust between their execution on September 15, 1927, and June 20, 1930, when the notice of default was recorded. It does not appear whether or not any payments were made. It is not alleged that with the consent of plaintiff company no payments were made.

The doctrine of those cases which raise a constructive trust upon a conveyance by deed absolute in reliance on the oral promise of the grantee to hold for the benefit of the grantor or a third party, cannot properly be extended to permit proof of a contemporaneous oral agreement that no payments should be made on a promissory note expressly pro-

viding for payments, or proof that an unconditional power of sale in the deed of trust securing said note should not be exercised pending sale of the property.

The rule as restated in *Rottman* v. *Hevener,* 54 Cal. App. 474, 484 [202 Pac. 329, 331], is as applicable to the instant case as it was to that case. It may therefore be. said in the instant case:

"It is not claimed that by reason of fraud, accident, or mistake there was any failure to cause the written instrument to express the intention of either of the parties. There is no allegation . . . that defendant was induced by fraud or mistake to agree to the insertion of the clause making the note payable one day after date. . . . What he [defendant] did he did with his eyes open. And he is charged with knowledge that under the law of this state, Civil Code, section 1625, a written contract supersedes all preceding or accompanying oral negotiations or stipulations. In the absence of fraud or mistake, the time of payment as fixed by the written terms of the note cannot be varied by any contemporaneous oral agreement. The rule that a writing which purports to be the complete contract of the parties is deemed in law to be the full repository of the agreement or contract, that the whole contract is expressed by it, and that evidence of oral stipulations is not admissible to incorporate other elements in it or to alter or enlarge its terms, is applicable to negotiable as well as to nonnegotiable instruments." (Citing cases.)

The demurrer was properly sustained. The fact that an order sustaining a demurrer is silent as to leave to amend does not constitute reversible error where the record fails to show that leave to amend was requested. (*Haddad* v. *McDowell,* 213 Cal. 690 [3 Pac. (2d). 550]; *Consolidated Reservoir etc. Co.* v. *Scarborough,* 216 Cal. 698 [16 Pac. (2d) 268]; *Philbrook* v. *Randall,* 195 Cal. 95 [231 Pac. 739].)

The judgment is affirmed.

Shenk, J., Thompson, J., Curtis, J., Langdon, J., Preston, J., and Waste, C. J., concurred.