[No. S111998. Feb. 2, 2004.]

CASA HERRERA, INC., Plaintiff and Appellant, v.
NASSER BEYDOUN et al., Defendants and Respondents.

## COUNSEL

Meisenheimer, Herron & Steele, Matthew V. Herron, Robert M. Steele; Post Kirby Noonan & Sweat, Michael J. Kirby and Matthew P. Nugent for Plaintiff and Appellant.

Gibson, Dunn & Crutcher, Theodore J. Boutrous, Jr., Julian W. Poon, Gregory D. Brown, Nicola T. Hanna and Michele L. Maryott for Defendants and Respondents Community First National Bank and Tom Ferrara.

Ira S. Carlin for Defendants and Respondents Nasser Beydoun and Am Mex Food Industries, Inc.

OPINION

**BROWN, J.**—A court resolves an action for breach of contract and fraud in favor of a defendant by applying the parol evidence rule. That defendant subsequently files a malicious prosecution action against the plaintiffs in the breach of contract action and others. We now consider whether the termination of the breach of contract and fraud action based on the parol evidence rule satisfies the favorable termination element of a malicious prosecution claim. We conclude it does.

## I.

### A.

In 1994, respondent Am Mex Food Industries, Inc. (Am Mex)—which was owned by respondent Nasser Beydoun—purchased an oven and related equipment from appellant Casa Herrera, Inc. (Casa Herrera or appellant) for manufacturing tortillas for sale to its distributors. As stated in the written sales contract, Casa Herrera promised that the oven would produce 1,500 dozen 10-ounce tortillas per hour, 1,800 dozen 8-ounce tortillas per hour, and 2,000 dozen 6-ounce tortillas per hour.[1] The contract also gave Am Mex 10 days to operate the oven after its installation and to return it if dissatisfied.

Casa Herrera delivered the oven to Am Mex, but Am Mex did not sign the written acceptance within 10 days after its installation because of difficulties in operating the oven. Casa Herrera then made some repairs and provided Am Mex with additional instructions on how to operate the oven. Over a month after the installation of the oven, Am Mex and Beydoun signed the acceptance, "acknowledging they had observed the oven in operation and were satisfied with the quantity and quality of production."

Am Mex began experiencing financial difficulties and was unable to service its debt to respondent Valle De Oro Bank (Valle), the predecessor to respondent Community First National Bank (collectively, the banks). Valle filed an action to enforce its security interest in Am Mex's assets and obtained the appointment of a receiver. The receiver eventually sold Am Mex's assets, including the oven, to Circle Foods.

Shortly after the appointment of the receiver, Am Mex and Beydoun sued Casa Herrera, asserting causes of action for breach of contract and fraudulent misrepresentation. As the basis for both causes of action, they alleged that Casa Herrera had promised the oven would produce 1,500 dozen *16-ounce* tortillas per hour even though Casa Herrera knew the oven did not and could not do so.

---

[1] The weights refer to the weight of one dozen tortillas.

At trial, the court, after hearing opening statements, granted Casa Herrera's motion for a nonsuit against Beydoun on the ground that Beydoun lacked standing to sue. After Am Mex presented its case, the trial court directed a verdict for Casa Herrera "on the ground[] that Am Mex had no standing to pursue said claims as they had been sold and assigned to Circle Foods pursuant to a written contract."

The Court of Appeal affirmed. But instead of relying on lack of standing, the court held that "there was no substantial evidence to support the claims for breach of contract or fraud." In support, the court found that the written sales contract between Am Mex and Casa Herrera was "integrated on the rates of guaranteed production, and the language specifying a guaranteed rate of 1500 dozen per hour for 10-ounce tortillas is not reasonably susceptible to the interpretation that the parties agreed to a guaranteed rate of 1500 dozen per hour for 16-ounce tortillas." The court then concluded that the "parol evidence rule barred Am Mex from attempting to show Casa Herrera breached a promise (or fraudulently promised) to provide an oven producing 16-ounce tortillas at the rate of 1500 dozen per hour."

**B.**

Following the Court of Appeal's decision, Casa Herrera filed the instant action against Beydoun, Am Mex, the banks, and Tom Ferrara, a director and officer of Valle (collectively respondents), asserting, among other things, causes of action for malicious prosecution.[2] As part of its malicious prosecution claims, Casa Herrera alleged that the Court of Appeal opinion in *Beydoun v. Casa Herrera, Inc.* (Jan. 10, 2000, D030061) (nonpub. opn.) constituted a termination on the merits in its favor.

The banks and Ferrara, joined by Am Mex and Beydoun, moved for judgment on the pleadings, contending, as a matter of law, Casa Herrera could not establish the favorable termination element of a malicious prosecution claim. Citing *Hall v. Harker* (1999) 69 Cal.App.4th 836, 845 [82 Cal.Rptr.2d 44] (*Hall*), the banks claimed that "a resolution . . . based on the parol evidence rule cannot be a favorable termination . . . so as to support a subsequent action for malicious prosecution." The trial court agreed and dismissed the malicious prosecution claims with prejudice.

The Court of Appeal reversed.[3] Declining to follow *Hall*, the court concluded that "when an action is terminated because the parol evidence rule

---

[2] Although the banks and Ferrara were not parties to the underlying action, Casa Herrera alleged that they "encouraged and advocated the continuation of the" action.

[3] Casa Herrera also asserted a cause of action under Code of Civil Procedure section 1908 against the banks. The trial court dismissed this cause of action with prejudice, and the Court of Appeal affirmed. The parties do not challenge this aspect of the Court of Appeal's ruling.

mandates the defendant's liability be determined by the provision embodied in the written contract rather than by any prior inconsistent oral promises, the action has been terminated for reasons that *do* reflect on the merits of the plaintiff's underlying claim that the underlying defendant was responsible or liable for allegedly breaching his contractual obligations." In reaching this conclusion, the court observed that "the parol evidence rule is not an evidentiary rule but is instead a rule that fixes duties and establishes rights and responsibilities among persons by declaring that the law will hold parties to their written agreements rather than to prior representations or promises inconsistent with the written agreement."

We granted review to determine whether a termination based on the parol evidence rule constitutes a favorable termination for malicious prosecution purposes, and conclude that it does.

## II.

"[I]n order to establish a cause of action for malicious prosecution of either a criminal or civil proceeding, a plaintiff must demonstrate 'that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor [citations]; (2) was brought without probable cause [citations]; and (3) was initiated with malice [citations].' " (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 871 [254 Cal.Rptr. 336, 765 P.2d 498] (*Sheldon Appel*), quoting *Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 50 [118 Cal.Rptr. 184, 529 P.2d 608].)

"The theory underlying the requirement of favorable termination is that it tends to indicate the innocence of the accused, and coupled with the other elements of lack of probable cause and malice, establishes the tort [of malicious prosecution]." (*Jaffe v. Stone* (1941) 18 Cal.2d 146, 150 [114 P.2d 335].) Thus, "[i]t is hornbook law that the plaintiff in a malicious prosecution action must plead and prove that the prior judicial proceeding of which he complains terminated in his favor." (*Babb v. Superior Court* (1971) 3 Cal.3d 841, 845 [92 Cal.Rptr. 179, 479 P.2d 379].)

To determine "whether there was a favorable termination," we "look at the judgment as a whole in the prior action . . . ." (*Sagonowsky v. More* (1998) 64 Cal.App.4th 122, 129 [75 Cal.Rptr.2d 118].) "It is not essential to maintenance of an action for malicious prosecution that the prior proceeding was favorably terminated following trial on the merits." (*Lackner v. LaCroix* (1979) 25 Cal.3d 747, 750 [159 Cal.Rptr. 693, 602 P.2d 393] (*Lackner*).) Rather, "[i]n order for the termination of a lawsuit to be considered favorable

to the malicious prosecution plaintiff, the termination must reflect the merits of the action and the plaintiff's innocence of the misconduct alleged in the lawsuit." (*Pender v. Radin* (1994) 23 Cal.App.4th 1807, 1814 [29 Cal.Rptr.2d 36].) For example, a termination is favorable for malicious prosecution purposes where the court in the underlying action: (1) granted summary judgment and issued sanctions because the claim was meritless (*Mattel, Inc. v. Luce, Forward, Hamilton & Scripps* (2002) 99 Cal.App.4th 1179, 1191 [121 Cal.Rptr.2d 794]); (2) granted summary judgment because there was insufficient evidence to establish a triable issue of fact (*Sierra Club Foundation v. Graham* (1999) 72 Cal.App.4th 1135, 1149–1150 [85 Cal.Rptr.2d 726] (*Sierra Club*)); or (3) held that the defendant, as a matter of law, violated no duty to the plaintiff (*Ray v. First Federal Bank* (1998) 61 Cal.App.4th 315, 318 [71 Cal.Rptr.2d 436] (*Ray*)).

However, a " 'favorable' termination does not occur merely because a party complained against has prevailed in an underlying action. . . . If the termination does not relate to the merits—reflecting on neither innocence of nor responsibility for the alleged misconduct—the termination is not favorable in the sense it would support a subsequent action for malicious prosecution." (*Lackner, supra,* 25 Cal.3d at p. 751, fn. omitted.) Thus, a "technical or procedural [termination] as distinguished from a substantive termination" is not favorable for purposes of a malicious prosecution claim. (*Ibid.*) Examples include dismissals (1) on statute of limitations grounds (*id.* at. pp. 751–752; *Warren v. Wasserman, Comden & Casselman* (1990) 220 Cal.App.3d 1297, 1303 [271 Cal.Rptr. 579] (*Warren*) ); (2) pursuant to a settlement (*Dalany v. American Pacific Holding Corp.* (1996) 42 Cal.App.4th 822, 828–829 [50 Cal.Rptr.2d 13]); or (3) on the grounds of laches (*Asia Investment Co. v. Borowski* (1982) 133 Cal.App.3d 832, 838–839 [184 Cal.Rptr. 317]).

■ With these standards in mind, we now turn to the Court of Appeal's decision terminating the underlying breach of contract and fraud action. (See *Ray, supra,* 61 Cal.App.4th at pp. 318–319 [holding "that the appellate decision . . . both marked and constituted favorable termination of that case"].) In affirming the judgment in favor of appellant, the Court of Appeal found that "there was no substantial evidence to support the [underlying] claims for breach of contract or fraud." Ostensibly, this finding reflects on the merits and appellant's innocence of the wrongful conduct alleged in the underlying action. (See *Sierra Club, supra,* 72 Cal.App.4th at pp. 1149–1150.) Nonetheless, respondents contend the termination was procedural or technical because the Court of Appeal refused to consider evidence of prior negotiations in light of the parol evidence rule. According to respondents, under *Lackner* the parol evidence rule is a procedural defense like the statute of frauds, and a termination based on that rule does not reflect on appellant's innocence. (See *Lackner, supra,* 25 Cal.3d at p. 751.) As explained below, we

disagree and find that a termination based on the parol evidence rule is a substantive termination in the malicious prosecution context.

The parol evidence rule is codified in Civil Code section 1625[4] and Code of Civil Procedure section 1856.[5] (See *Marani v. Jackson* (1986) 183 Cal.App.3d 695, 701 [228 Cal.Rptr. 518] (*Marani*).) It "generally prohibits the introduction of any extrinsic evidence, whether oral or written, to vary, alter or add to the terms of an integrated written instrument." (*Alling v. Universal Manufacturing Corp.* (1992) 5 Cal.App.4th 1412, 1433 [7 Cal.Rptr.2d 718] (*Alling*).) The rule does not, however, prohibit the introduction of extrinsic evidence "to explain the meaning of a written contract . . . [if] the meaning urged is one to which the written contract terms are reasonably susceptible." (*BMW of North America, Inc. v. New Motor Vehicle Bd.* (1984) 162 Cal.App.3d 980, 990, fn. 4 [209 Cal.Rptr. 50] (*BMW*).)

Although the rule results in the exclusion of evidence, it "is not a rule of evidence *but is one of substantive law.*" (*Estate of Gaines* (1940) 15 Cal.2d 255, 264 [100 P.2d 1055], italics added.) Of course, our prior characterization of the parol evidence rule as a substantive rule of law is not necessarily dispositive in the malicious prosecution context. (See *Grant v. McAuliffe* (1953) 41 Cal.2d 859, 865 [264 P.2d 944] [" ' "Substance" and "procedure" . . . are not legal concepts of invariable content' . . . and a statute or other rule of law will be characterized as substantive or procedural according to the

---

[4] Civil Code section 1625 provides that: "The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument."

[5] Code of Civil Procedure section 1856 states that: "(a) Terms set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement. [¶] (b) The terms set forth in a writing described in subdivision (a) may be explained or supplemented by evidence of consistent additional terms unless the writing is intended also as a complete and exclusive statement of the terms of the agreement. [¶] (c) The terms set forth in a writing described in subdivision (a) may be explained or supplemented by course of dealing or usage of trade or by course of performance. [¶] (d) The court shall determine whether the writing is intended by the parties as a final expression of their agreement with respect to such terms as are included therein and whether the writing is intended also as a complete and exclusive statement of the terms of the agreement. [¶] (e) Where a mistake or imperfection of the writing is put in issue by the pleadings, this section does not exclude evidence relevant to that issue. [¶] (f) Where the validity of the agreement is the fact in dispute, this section does not exclude evidence relevant to that issue. [¶] (g) This section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as defined in [Code of Civil Procedure] Section 1860, or to explain an extrinsic ambiguity or otherwise interpret the terms of the agreement, or to establish illegality or fraud. [¶] (h) As used in this section, the term agreement includes deeds and wills, as well as contracts between parties."

nature of the problem for which a characterization must be made"].) But a careful examination of the underlying nature of the rule demonstrates that it should be so.

Unlike traditional rules of evidence, the parol evidence rule "does not exclude evidence for any of the reasons ordinarily requiring exclusion, based on the probative value of such evidence or the policy of its admission. The rule as applied to contracts is simply that as a matter of substantive law, a certain act, the act of embodying the complete terms of an agreement in a writing (the 'integration'), *becomes the contract of the parties*. The point then is, not how the agreement is to be proved, because as a matter of law the writing is the agreement." (*Estate of Gaines, supra,* 15 Cal.2d at pp. 264–265.) Thus, "[u]nder [the] rule[,] the act of executing a written contract . . . *supersedes* all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." (*BMW, supra,* 162 Cal.App.3d at p. 990, italics added.) And "[e]xtrinsic evidence cannot be admitted to prove what the agreement was, not for any of the usual reasons for exclusion of evidence, but because as a matter of law the agreement is the writing itself. [Citation.]" (*Ibid.*) "Such evidence is legally irrelevant and cannot support a judgment." (*Marani, supra,* 183 Cal.App.3d at p. 701.)

■ The parol evidence rule therefore establishes that the terms contained in an integrated written agreement may not be contradicted by prior or contemporaneous agreements. In doing so, the rule necessarily bars consideration of extrinsic evidence of prior or contemporaneous negotiations or agreements at variance with the written agreement. "[A]s a matter of substantive law such evidence cannot serve to create or alter the obligations under the instrument." (*Tahoe National Bank v. Phillips* (1971) 4 Cal.3d 11, 23 [92 Cal.Rptr. 704, 480 P.2d 320] (*Tahoe National Bank*).) In other words, the evidentiary consequences of the rule follow from its substantive component—which establishes, as a matter of law, the enforceable and incontrovertible terms of an integrated written agreement.

■ Thus, by applying the parol evidence rule, the Court of Appeal, in effect, held that the written sales agreement was the only existing agreement of the parties. (See *Estate of Gaines, supra,* 15 Cal.2d at pp. 264–265.) As a consequence of this substantive holding, the court refused to consider extrinsic evidence suggesting that the parties' agreement had included a term promising that the oven would produce 1,500 dozen 16-ounce tortillas per hour. Such evidence was irrelevant as a matter of law. (See *Marani, supra,* 183 Cal.App.3d at p. 701.) After defining the terms of the parties' agreement by applying the parol evidence rule, the court then found that appellant did not breach the contract or commit fraud. As such, the Court of

Appeal necessarily resolved the underlying action on the merits, and its decision reflects on appellant's innocence of the alleged misconduct. The decision therefore constitutes a favorable termination for malicious prosecution purposes.

Respondents' reliance on language in *Lackner* analogizing a termination on statute of limitations grounds to a termination based on the statute of frauds (*Lackner, supra,* 25 Cal.3d at p. 751), and their attempts to equate the statute of frauds to the parol evidence rule are unavailing. Although "[t]he evidentiary consequences of the statute of frauds . . . are in many respects similar to those of the parol evidence rule" (*Ellis v. Klaff* (1950) 96 Cal.App.2d 471, 475–476 [216 P.2d 15]) and "both aim to secure purity of evidence" (*Alameda County Title Ins. Co. v. Panella* (1933) 218 Cal. 510, 515 [24 P.2d 163] (*Alameda County Title*)), the differences between the rules confirm that a termination based on the parol evidence rule is substantive—and not technical or procedural—for malicious prosecution purposes.

The statute of frauds "demands that every material term of an agreement within its provisions be reduced to written form, whether the parties desire to do so or not." (*Ellis v. Klaff, supra,* 96 Cal.App.2d at p. 476.) Thus, under the statute of frauds, the written agreement "serves only to prevent the contract from being unenforceable" (*Hale v. Bohannon* (1952) 38 Cal.2d 458, 465 [241 P.2d 4]); it does not necessarily establish the terms of the parties' contract. Indeed, the sole "object of the statute of frauds is to prevent perjured testimony in proof of purported contracts of important types, and the statute applies only to those enumerated types." (2 Witkin, Cal. Evidence (4th ed. 2000) Documentary Evidence, § 63, p. 183.)

By contrast, under the parol evidence rule, all prior or contemporaneous "oral negotiations are merged in the written contract, which is conclusive in the absence of a plea of actual fraud or mistake." (*Alameda County Title, supra,* 218 Cal. at p. 515.) The written agreement supersedes these negotiations and becomes the parties' sole agreement (see *Estate of Gaines, supra,* 15 Cal.2d at pp. 264–265), and extrinsic evidence may not "add to, detract from, or vary the terms of" that agreement (*Pacific Gas & E. Co. v. G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 39 [69 Cal.Rptr. 561, 442 P.2d 641]). As such, the rule "applies to any type of contract, and its purpose is to make sure that the parties' final understanding, deliberately expressed in writing, shall not be changed." (2 Witkin, Cal. Evidence, *supra,* Documentary Evidence, § 63, p. 183.)

Thus, the parol evidence rule, unlike the statute of frauds, does not merely serve an evidentiary purpose; it determines the enforceable and incontrovertible terms of an integrated written agreement. (See *Alling, supra,* 5

Cal.App.4th at p. 1433 ["The parol evidence rule is not merely a rule of evidence concerned with the method of proving an agreement; it is a principle of substantive law"].) By defining the terms of the parties' agreement, the rule is necessarily substantive—and not procedural or technical—in the malicious prosecution context. Indeed, its substantive nature is further demonstrated by the fact that, unlike the statute of frauds (*Lackner, supra,* 25 Cal.3d at p. 751), "we cannot consistently subjugate [the parol evidence] rule to the principles of objection and waiver codified in the Evidence Code" (*Tahoe National Bank, supra,* 4 Cal.3d at p. 23). Likewise, the doctrine of estoppel may preclude the application of the statute of frauds but has no force against the parol evidence rule. (*Alameda County Title, supra,* 218 Cal. at pp. 515–516.)

As such, the reasoning of *Hall, supra,* 69 Cal.App.4th 836, is not persuasive. In *Hall,* the Court of Appeal reasoned that the "resolution of the underlying case based on the parol evidence rule cannot be a favorable termination" because the rule "cannot erase the *existence* of the [collateral] agreements, if they actually took place." (*Id.* at p. 845.) But this reasoning betrays a misunderstanding of the parol evidence rule. The parol evidence rule establishes that an integrated written agreement *supersedes* any prior or contemporaneous promise at variance with the terms of that agreement. (*BMW, supra,* 162 Cal.App.3d at p. 990.) Thus, any alleged oral agreement regarding the oven's capacity *no longer exists* because the written sales contract, as a matter of law, has replaced it. The Court of Appeal's decision in the underlying action therefore establishes that appellant could not have breached any extant agreement—enforceable or unenforceable. In doing so, the decision necessarily "show[s] the innocence of . . . [appellant of the alleged misconduct] in the prior action"—breaching the sales agreement and fraudulently exaggerating the oven's production capacity. (*Warren, supra,* 220 Cal.App.3d at p. 1303.)

Respondents' reliance on a comment to section 530 of the Restatement Second of Torts is misplaced. Although the comment states that a promise made without the intention to perform may still support a cause of action for fraud, even though the promise "is unprovable and so unenforceable under the parol evidence rule" (Rest.2d Torts, § 530, com. c, p. 64), we rejected this proposition long ago. (See *Bank of America etc. Assn. v. Pendergrass* (1935) 4 Cal.2d 258, 263–264 [48 P.2d 659].) And, despite some criticism, our courts have consistently rejected promissory fraud claims premised on prior or contemporaneous statements at variance with the terms of a written integrated agreement.[6] (See, e.g., *Wang v. Massey Chevrolet* (2002) 97

_____

[6] In *Pacific State Bank v. Greene* (2003) 110 Cal.App.4th 375, 392 [1 Cal.Rptr.3d 739], the Court of Appeal recognized an exception to this rule for "misrepresentations of fact over the content of an agreement at the time of execution . . . .." Even assuming that such an exception

Cal.App.4th 856, 867–871, 873 [118 Cal.Rptr.2d 770] [following *Pendergrass* but holding that the parol evidence rule does not bar claims for violations of Civ. Code, § 1770, subd. (a)(14) and Bus. & Prof. Code, § 17200]; *Alling, supra*, 5 Cal.App.4th at p. 1436; *Continental Airlines, Inc. v. McDonnell Douglas Corp.* (1989) 216 Cal.App.3d 388, 419 [264 Cal.Rptr. 779]; *Price v. Wells Fargo Bank* (1989) 213 Cal.App.3d 465, 483–486 [261 Cal.Rptr. 735].) Because the parol evidence rule effectively immunizes appellant from liability for prior or contemporaneous statements at variance with the written sales contract, the Court of Appeal's decision tends to show appellant's innocence of fraud. (See *Lackner, supra*, 25 Cal.3d at p. 751, fn. 2 ["A termination 'inconsistent with wrongdoing' implies a lack of wrongful conduct and thus innocence—a favorable termination"].)

In this respect, *Berman v. RCA Auto Corp.* (1986) 177 Cal.App.3d 321 [222 Cal.Rptr. 877], is instructive. In *Berman*, a court terminated the underlying fraud action because the alleged misstatements were protected by the litigation privilege codified in Civil Code section 47. In the subsequent malicious prosecution action, the Court of Appeal concluded that the termination was favorable because the litigation privilege provides "absolute protection from liability" for statements made in the course of a judicial proceeding. (*Berman*, at p. 324.) As such, the "Legislature has in effect said that suits based on privileged statements are suits which are without merit." (*Id.* at p. 325.) Similarly, the parol evidence rule, as a practical matter, provides "absolute protection from liability" for prior or contemporaneous statements at variance with the terms of a written integrated agreement.[7] (*Berman*, at p. 324.) Because the Legislature, by codifying the rule, has "in effect" stated that suits based on such statements "are without merit," a termination based on the rule is favorable for malicious prosecution purposes. (*Id.* at p. 325.)

By contrast, *Robbins v. Blecher* (1997) 52 Cal.App.4th 886 [60 Cal.Rptr.2d 815], is distinguishable. In *Robbins*, the defendants in the malicious prosecution action had filed an alter ego action against the plaintiffs in the malicious prosecution action after obtaining an antitrust judgment against a corporation owned by the plaintiffs. (*Id.* at pp. 890–891.) After the reversal of the antitrust judgment, the defendants voluntarily dismissed the alter ego action as moot. (*Id.* at p. 891.) The plaintiffs responded by filing a malicious prosecution action, contending that the dismissal constituted a favorable termination because the defendants could no longer establish an element of the alter ego action after the reversal of the antitrust judgment. (*Id.* at p. 894.)

exists, it does not apply here because there is no allegation that appellant misrepresented the contents of the written sales agreement.

[7] Indeed, neither the doctrine of waiver (see *Tahoe National Bank, supra*, 4 Cal.3d at p. 23) nor the doctrine of estoppel (see *Alameda County Title, supra*, 218 Cal. at pp. 515–516) affects this protection.

The Court of Appeal disagreed and affirmed the dismissal of the malicious prosecution action. According to the court, the defendants voluntarily dismissed the action because they "had simply *lost standing* to pursue" the alter ego action. (*Ibid.*, italics added.) Thus, in dismissing the action, the defendants had not conceded that the plaintiffs "had done nothing wrong; they had merely conceded that" they "[were] no longer in a position to complain of [plaintiffs'] wrongdoing." (*Ibid.*) Unlike the dismissal in *Robbins*, the Court of Appeal in the underlying action in this case did not rely on a technical or procedural defense like lack of standing. Instead, the court applied a substantive rule of contract law and resolved the action on its merits. (See *ante*, at pp. 344–347.)

Finally, public policy considerations do not compel a different result. Concerns over the potential chilling effect of our decision on breach of contract actions due to judicial confusion over the parol evidence rule are readily assuaged by stringent enforcement of the probable cause element of the malicious prosecution tort. Indeed, by requiring courts "to make an objective determination of the 'reasonableness' of the defendant's conduct" (*Sheldon Appel*, *supra*, 47 Cal.3d at p. 878) or to determine "whether any reasonable attorney would have thought the claim tenable" (*id.* at p. 886), the probable cause requirement adequately protects the breach of contract plaintiff's "interest 'in freedom from unjustifiable and unreasonable litigation' " (*id.* at p. 878).

The policy considerations cited in *Lackner* are also not relevant here. In *Lackner*, we held that a termination on statute of limitations grounds did not constitute a favorable termination in the malicious prosecution context. (*Lackner*, *supra*, 25 Cal.3d at p. 751.) In reaching this conclusion, we observed that strong policy considerations militated against a contrary holding. For example, we noted that the statute of limitations defense seeks to avoid litigation over stale claims and that allowing the malicious prosecution claim to proceed would put "in question the same stale issues." (*Id.* at p. 752.) We also noted that the statute of limitations is a defense and may only be used as a " ' "shield" ' "—and not as a " ' "sword." ' " (*Ibid.*)

Neither consideration, however, applies here. Unlike the statute of limitations, the parol evidence rule does not seek to avoid litigation over stale claims. Thus, our concern in *Lackner* is not implicated here. In any event, finding a termination based on the parol evidence rule to be favorable does not put "in question the same stale issues" to be avoided by the rule. (*Lackner*, *supra*, 25 Cal.3d at p. 752.) Like the court in the underlying action, the court in the malicious prosecution action will have to consider the extrinsic evidence in order to determine whether the malicious prosecution defendant had an objectively reasonable basis for filing the underlying action

in light of the parol evidence rule. (See *Alling, supra*, 5 Cal.App.4th at p. 1434 [" 'The matters to which the court must address itself in determining whether the evidence of an oral agreement should go to the jury are such questions as (1) whether the written agreement appears to state a complete agreement; (2) whether the alleged oral agreement directly contradicts the writing; (3) whether the oral agreement might naturally be made as a separate agreement; [and] (4) whether the jury might be misled by the introduction of the parol testimony' "].) Moreover, unlike the statute of limitations, the parol evidence rule is not a procedural defense but a substantive principle of law. (See *ante*, at pp. 344–347.) Thus, there is no policy consideration precluding its use as a sword rather than a shield.

Although malicious prosecution suits are disfavored, we will not bar such suits for that reason alone. As we stated long ago, "we should not be led so astray by the notion of a 'disfavored' action as to defeat the established rights of the plaintiff by indirection; for example, by inventing new limitations on the substantive right, which are without support in principle or authority, or by adopting stricter requirements of pleading that are warranted by the general rules of pleading. In brief, the public policy involved has properly served, over many years, to crystallize the limitations on the tort, and the defenses available to the defendant. Having served that purpose, it should not be pressed further to the extreme of practical nullification of the tort and consequent defeat of the other important policy which underlies it of protecting the individual from the damage caused by unjustifiable criminal [and civil] prosecution[s]." (*Jaffe v. Stone, supra*, 18 Cal.2d at pp. 159–160.) Accordingly, we hold that terminations based on the parol evidence rule are favorable for malicious prosecution purposes. In doing so, we disapprove of *Hall v. Harker, supra*, 69 Cal.App.4th 836, to the extent it is inconsistent with our opinion here.

## III.

We affirm the judgment of the Court of Appeal.

George, C. J., Kennard, J., Baxter J., Werdegar, J., Chin, J., and Moreno, J., concurred.