Filed 3/19/21  Garmestani v. Wasserman CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| MARJAN GARMESTANI, | B304973, B307428 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 19STCV35142) |
| v. | ORDER MODIFYING OPINION |
| MICHAEL E. WASSERMAN et al., | [NO CHANGE IN JUDGMENT] |
| Defendants and Respondents. | |

THE COURT:

Tashnizi Law Firm and Paul Tashnizi as counsel for Faramarz Zargar filed a notice of errata on March 17, 2021.  He stated that he erroneously listed attorney Janette S. Bodenstein as an attorney of record for Zargar and requested that we correct our opinion, filed on March 12, 2021.  Janette S. Bodenstein then filed a declaration stating under penalty of perjury that she never represented Zargar in the underlying lawsuit or appeal.

It is therefore ordered that the opinion filed on March 12, 2021 is modified to delete Janette S. Bodenstein as counsel for Zargar.

This modification does not change the judgment.
NOT TO BE PUBLISHED.

_____

SALTER, J.*          LAVIN, Acting P. J.          EGERTON, J.

---

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 3/12/21  Garmestani v. Wasserman CA2/3 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MARJAN GARMESTANI,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>MICHAEL E. WASSERMAN et al.,<br><br>Defendants and Respondents. | B304973, B307428<br><br>(Los Angeles County<br>Super. Ct.<br>No. 19STCV35142) |

APPEALS from orders of the Superior Court of Los Angeles County, Anthony J. Mohr, Judge.  Affirmed.

Bartsch Law Group and Duane L. Bartsch for Plaintiff and Appellant.

Nemecek & Cole, Jonathan B. Cole, Mark Schaeffer and Janette S. Bodenstein for Defendant and Respondent Michael E. Wasserman.

Tashnizi Law Firm, Paul Tashnizi and Janette S. Bodenstein for Defendant and Respondent Faramarz Zargar.

————————————

This is an anti-SLAPP action. In an underlying action, Faramarz Zargar sued Marjan Garmestani for dental malpractice. After Garmestani prevailed in that lawsuit, she sued Zargar and the attorney who had represented him, Michael E. Wasserman, for malicious prosecution. Zargar and Wasserman moved to specially strike the complaint under Code of Civil Procedure[1] section 425.16. The trial court granted their motions. Garmestani now appeals the orders granting those motions and awarding Zargar and Wasserman attorney fees.[2] We affirm the orders.

## BACKGROUND

I.     The underlying action

Garmestani, a dentist, treated Zargar by replacing his lower teeth with implants. She last saw him in May 2016. Zargar thereafter sued Garmestani for negligence arising out of that treatment. A jury found that Garmestani was negligent, but her negligence was not a substantial factor in causing harm to Zargar. Judgment was therefore entered in Garmestani's favor.

II.    The malicious prosecution action

Garmestani then sued Zargar and Wasserman for malicious prosecution, negligence, and intentional and negligent

---

[1] All further statutory references are to the Code of Civil Procedure.

[2] Zargar has filed a joinder in Wasserman's briefs on appeal.

infliction of emotional distress.[3]  Garmestani alleged that in the underlying action Zargar concealed that other dentists treated him after she did and that Wasserman, despite learning of his client's deceit, continued to prosecute the underlying action though lacking an honest and reasonable belief in it.  As proof that another dentist treated Zargar and caused any injuries, Garmestani primarily relied on the last X-ray she took of him on May 20, 2016 to show that she put one type of material in Zargar's access holes.  But subsequent X-rays showed a *different* material in the access holes.  From this, Garmestani surmised that another dentist treated Zargar after he left her care.  Yet, in discovery responses Zargar never identified a dentist who treated him after he left Garmestani's care.

In response to the complaint, Zargar and Wasserman filed separate motions to strike the operative pleading, the second amended complaint.

A.    *Wasserman's motion and evidence*

Wasserman argued that Garmestani could not show a probability of prevailing on her malicious prosecution cause of action, and the litigation privilege barred the remaining causes of action.  To support his motion, Wasserman submitted his declaration and discovery from the underlying action.

1.    **Wasserman's declaration**

Wasserman denied harboring malice, ill will or spite towards Garmestani in filing and maintaining the underlying action.  Rather, before filing the complaint, he conducted a

---

[3] Zargar also sued but dismissed the Law Office of Michael E. Wasserman.

3

detailed investigation that included reviewing Zargar's medical records and consulting implant expert Dr. Nader Salib, who examined Zargar and advised that Garmestani had improperly placed the implants. After the case was filed, Wasserman had Zargar examined by Dr. Daniel Kantarovich, who opined that the dental work Garmestani performed was negligent. Throughout the litigation, Zargar maintained that only Garmestani treated him for his implants, although he did consult others. Wasserman had no reason to doubt Zargar's claim that the dentures and implants Zargar wore at trial were the ones Garmestani made. Wasserman also denied that Garmestani's attorney in the underlying action told him that Zargar was concealing the identity of a treating dentist and that he should dismiss the case.

## 2. Discovery in the underlying action

Wasserman countered Garmestani's claim that Zargar concealed he saw other dentists by pointing to discovery in which Zargar identified dentists he consulted because he was experiencing discomfort and was unable to eat after getting his implants: Dr. Sohrab Yazdani, Dr. Ron Nourian at Whittier Dental Center, and Dr. Taher Aminikharrazi. Dr. Aminikharrazi advised Zargar in July 2016 that his implants were poorly placed and infected and recommended removing and replacing them.

Zargar's expert Dr. Salib similarly testified at his deposition that Zargar's implants should be removed because food and bacteria got in through a gap in the prosthesis. Dr. Salib identified other problems with the implants, including that they were poorly placed in insufficient bone. According to him, Garmestani "violated all basic implantology rules and did not respect basic biology of keeping sufficient distance" for hard and soft tissue considerations.

4

Garmestani's own experts agreed that there were problems with Zargar's implants. One said that Garmestani's last X-ray showed a gap in the seating of the prosthesis. Her other expert testified at his deposition that the framework did not fit on a lower interior implant and that Garmestani did not correct the problem.

To further counter the assertion that someone treated Zargar after he stopped seeing Garmestani, Zargar's prosthodontic expert Dr. Kantarovich investigated whether Zargar's prosthesis had been removed after Zargar left Garmestani's care. His investigation was inconclusive. Still, he found speculative the claim that Zargar's prosthesis had been removed and replaced. Instead, he believed that the last X-ray Garmestani claimed she took on May 20, 2016 was actually taken a month earlier, in April 2016. This explained why X-rays taken after Zargar left Garmestani's care showed a material in the access holes that was different than shown in Garmestani's last X-ray. Stated otherwise, after Garmestani took the X-ray in April 2016, she put a different material in his access holes and that is what was seen on subsequent X-rays.

B. *Zargar's motion and evidence*

Zargar also argued that Garmestani could not establish the elements of a malicious prosecution action. Rather, Zargar had brought and continued the underlying action with probable cause, as the jury's finding that Garmestani was negligent underscored. Further, Zargar suffered pain, inflammation, and infection after Garmestani's treatment, showing that she injured him. Similar to Wasserman's motion, Zargar denied that he concealed the identity of other dentists he saw after Garmestani

5

and pointed to his discovery responses identifying various dentists he had consulted.

### C.   *Garmestani's oppositions*

To show that Zargar and Wasserman lacked probable cause to bring and to maintain the underlying action, Garmestani submitted select portions of Zargar's written discovery responses from the underlying action in which Zargar identified Dr. Aminikharrazi as the only dentist he saw after leaving Garmestani's care.  Similarly, at his deposition, Zargar said that Dr. Aminikharrazi was the only dentist he saw after discontinuing care with Garmestani and denied seeing a dentist before discontinuing treatment.

Finally, Garmestani submitted portions of Dr. Salib's deposition testimony in which he answered questions about whether someone treated Zargar after Zargar left Garmestani's care.  According to Garmestani's interpretation of that testimony, Dr. Salib agreed that another dentist removed Zargar's prosthesis after Zargar left her care.

## III.   The trial court's ruling

The trial court granted Wasserman's and Zargar's motions. It found "abundant" probable cause to bring the case based on experts who opined that Garmestani was negligent.  The trial court also noted that the existence of another dentist would not negate probable cause.  Finally, there was no evidence of malice "whatsoever."  Accordingly, the trial court entered judgment in favor of Wasserman and Zargar and dismissed Garmestani's operative pleading with prejudice.  The trial court thereafter granted Wasserman and Zargar attorney fees under section 425.16, subdivision (c)(1).

6

# DISCUSSION

## I.    The anti-SLAPP statute and standard of review

Section 425.16, the anti-SLAPP statute, provides a procedure for the early dismissal of SLAPP suits (strategic lawsuits against public participation), which is litigation of a harassing nature brought to challenge the exercise of protected free speech rights. (*Fahlen v. Sutter Central Valley Hospitals* (2014) 58 Cal.4th 655, 665 & fn. 3.) The anti-SLAPP statute is designed to weed out, at an early stage, meritless claims arising from protected activity. (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.)

Evaluating an anti-SLAPP motion requires the trial court first to determine whether the moving defendant has made a threshold showing that the challenged action arises from protected activity, that is, activity in furtherance of the rights of petition or free speech. (§ 425.16, subd. (e); *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056.) If so, the burden shifts to the plaintiff to demonstrate a probability of prevailing. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 819–820.) This second step is a summary-judgment-like procedure at which the trial court does not weigh evidence or resolve conflicting factual claims. (*Baral v. Schnitt*, *supra*, 1 Cal.5th at p. 384.) The trial court's inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment, accepting as true the plaintiff's evidence and evaluating the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law. (*Id.* at pp. 384–385.)

We review de novo an order granting a special motion to strike. (*Oasis West Realty, LLC v. Goldman, supra,* 51 Cal.4th at

7

p. 820.)  We consider the "pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based," examine the complaint in a fair and commonsense manner, and broadly construe the anti-SLAPP statute.  (§ 425.16, subds. (a), (b)(2).)  However, we do not weigh credibility or compare the weight of the evidence.  (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

II.     Malicious prosecution and probability of prevailing[4]

There is no dispute that the action arises from protected activity.  We therefore proceed to the second prong of the anti-SLAPP statute, whether Garmestani established a probability of prevailing on her malicious prosecution cause of action.  To establish that cause of action, she had to plead and prove that the underlying action (1) was commenced by or at the defendants' direction and was pursued to a legal termination in plaintiff's favor; (2) was brought without probable cause; and (3) was initiated with malice.  (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 676.)  A cause of action for malicious prosecution will lie if an action is commenced or continued without probable cause.  (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 965–966.)  Here, Garmestani obtained a judgment on the merits in her favor in the underlying action, thereby satisfying the first element of the cause of action.  (See generally *Casa Herrera, Inc. v. Beydoun*

---

[4] Garmestani has not addressed her causes of action for negligence and for intentional and negligent infliction of emotional distress.  Accordingly, she has forfeited any challenge to the ruling on those causes of action, and we do not address them.  (See, e.g., *Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1177–1178.)

(2004) 32 Cal.4th 336, 341–342.) We therefore focus on the second element, probable cause, because it is dispositive of the appeal and obviates any need to discuss the third element of malice.

Probable cause asks whether the prior action was objectively legally tenable. (*Soukup v. Law Offices of Herbert Hafif, supra*, 39 Cal.4th at p. 292.) "Probable cause is a low threshold designed to protect a litigant's right to assert arguable legal claims even if the claims are extremely unlikely to succeed," and therefore the standard of probable cause to bring a civil suit is equivalent to that for determining the frivolousness of an appeal. (*Plumley v. Mockett* (2008) 164 Cal.App.4th 1031, 1047.) Only actions that any reasonable attorney would agree are totally and completely without merit may form the basis for a malicious prosecution action. (*Id.* at p. 1048; *Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 824.) "Plaintiffs and their attorneys are not required, on penalty of tort liability, to attempt to predict how a trier of fact will weigh the competing evidence, or to abandon their claim if they think it likely the evidence will ultimately weigh against them. They have the right to bring a claim they think unlikely to succeed, so long as it is arguably meritorious." (*Wilson*, at p. 822.)

As the trial court found here, Wasserman and Zargar had abundant probable cause to bring and to maintain the underlying action. After Garmestani treated Zargar, he began experiencing pain and was unable to chew on one side of his mouth. Zargar therefore consulted Dr. Aminikharrazi, who told Zargar the implants were improperly placed and infected and recommended replacing them. Before Wasserman filed a lawsuit on Zargar's behalf, Wasserman had another dentist familiar with implants

9

evaluate Zargar, and that dentist, Dr. Salib, agreed that Garmestani had improperly placed the implants. Then, during litigation, other experts—including Garmestani's—agreed that the prosthesis did not fit properly. This constituted abundant competent evidence to substantiate the negligence claim. (See generally *Wilson v. Parker, Coverty & Chidester*, *supra*, 28 Cal.4th at p. 822.) Indeed, it is hard to see that any reasonable attorney would consider the claim meritless and frivolous.

Garmestani, however, maintains that the evidence conclusively established another dentist treated Zargar and that Zargar concealed this dentist's identity. However, it is by no means certain that anyone other than Garmestani treated Zargar. Garmestani primarily relies on X-rays taken after she stopped treating Zargar. Those X-rays show a cement material in the prosthetic's access holes that was not present in the last X-ray she took of Zargar, which she claimed she took in May 2016. To Garmestani, this is the smoking gun that proves another doctor treated Zargar after she did; hence, there was a superseding cause of his injuries. But Dr. Kantarovich offered other explanations for this mystery other than that somebody treated Zargar after Garmestani, the main one being that Garmestani was lying. According to Dr. Kantarovich, the X-rays were not taken in May 2016, when Garmestani said they were. They were taken earlier, in April 2016. If so, then Garmestani, who removed Zargar's prosthesis multiple times before she stopped seeing him, could have put the different material in the access holes that appeared on subsequent X-rays.

Garmestani also makes too much of Dr. Salib's deposition testimony about the alleged undisclosed dentist. Dr. Salib did not testify that someone treated Zargar after Garmestani.

10

Dr. Salib merely agreed that Garmestani used one type of material to fill access holes and that X-rays taken after Zargar left her care showed a different material in them. Then, in response to a question *presuming* the existence of another dentist, Dr. Salib said he would have liked to have seen that dentist's records. But Dr. Salib did not testify either that another dentist existed or that another dentist treated Zargar after Garmestani. He did not know if anyone removed the prosthesis after Zargar left Garmestani's care. Indeed, whether someone removed the prosthesis after Zargar stopped seeing Garmestani was irrelevant to his opinion about Garmestani's negligence. Thus, neither the X-rays nor Dr. Salib's testimony conclusively established that Zargar received treatment after Garmestani such that she was not the cause of his injury. Indeed, Garmestani's own expert had no opinion whether any dentist treated Zargar after Garmestani.

Even if another dentist treated Zargar after he stopped seeing Garmestani, that would not necessarily show the absence of probable cause for the underlying action. Rather, the defense of superseding cause absolves a tortfeasor, even though her conduct was a substantial contributing factor, when an independent event intervenes in the chain of causation, producing harm of a kind and degree so far beyond the risk the original tortfeasor should have foreseen that it is unfair to hold her responsible. (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 573, fn. 9.) Given that multiple dentists and experts found that Garmestani's prosthesis was poorly placed and that Zargar experienced pain and infection, a reasonable attorney could believe that a jury would find Garmestani liable, even if another tortfeasor existed. In fact, the jury found that Garmestani was

11

negligent, even if her negligence was not a substantial factor in causing the injury.

Given that nothing conclusively established that some unnamed dentist treated Zargar, he can hardly be found guilty of concealing the identity of someone who might not exist. Rather, Zargar consistently maintained that only Garmestani treated him in connection with the implants. And Wasserman was entitled to rely on Zargar's representations in the absence of discovering Zargar provided false information. (See, e.g., *Litinsky v. Kaplan* (2019) 40 Cal.App.5th 970, 981.) Therefore, Garmestani's reliance on Zargar's supposedly inadequate discovery responses does not help her meet her burden. In accord with his position that he only treated with Garmestani, Zargar identified dentists whom he consulted but from whom he received no treatment. Further, Garmestani's claim that Zargar identified only Dr. Aminikharrazi in discovery is simply wrong. He also identified Dr. Yazdani and the Whittier Dental Center.

As for Garmestani's contention that the trial court improperly weighed the evidence and credited only Zargar's and Wasserman's evidence, it is meritless. She takes out of context comments the trial court made. The trial court said that Garmestani was inviting speculation "as to some unknown damage. Yes, there is a photograph. But there's really no solid evidence of an unknown dentist. There might be." Even so, "the evidence doesn't preponderate for lack of probable cause. [¶] Not only that, there is no indication of malice, whatsoever, in this case. Again, you've got expert witnesses. The Plaintiff's counsel consulted with an expert. . . . [T]he Plaintiff's counsel talked with . . . the Plaintiff. *I have a right to believe what the Plaintiff was saying*." (Italics added.) Considering these comments in the

12

totality of the trial court's statement, it was merely acknowledging that Zargar and Wasserman's showing defeated Garmestani's claim. (See, e.g., *Baral v. Schnitt*, *supra*, 1 Cal.5th at pp. 384–385.) The trial court did not resolve disputed issues of fact, such as whether a dentist treated Zargar after Garmestani did. In fact, the trial court said that the existence of another dentist would not alter its opinion. In short, the trial court properly decided issues of law based on the facts before it, accepting as true Garmestani's evidence but finding that Wasserman's and Zargar's showing defeated it as a matter of law. (See, e.g., *Litinsky v. Kaplan*, *supra*, 40 Cal.App.5th at p. 982.) But, even if we assumed that the trial court misunderstood its role in evaluating the anti-SLAPP motions, it would be of no moment because our review is de novo.

III.    Attorney fees

The only argument Garmestani makes regarding the order granting Wasserman and Zargar attorney fees is that if we reverse the orders striking her complaint, we must also reverse the order granting attorney fees. As we affirm the orders striking Garmestani's complaint, we also affirm the order awarding Wasserman and Zargar their attorney fees.

## DISPOSITION

The orders are affirmed.  Michael E. Wasserman and Faramarz Zargar are awarded their costs on appeal.
NOT TO BE PUBLISHED.


SALTER, J.*


We concur:



LAVIN, Acting P. J.



EGERTON, J.

---

* Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14