Filed 7/27/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ELAINE B. ALSTON et al., | |
| Plaintiffs and Appellants, | G057157 |
| v. | (Super. Ct. No. 30-2018-00997214) |
| MICHAEL G. DAWE et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of dismissal of the Superior Court of Orange County, Sheila Fell, Judge.  Affirmed in part, reversed in part, and remanded.

Copenbarger & Associates, Paul D. Copenbarger and Elaine B. Alston for Plaintiffs and Appellants.

Prenovost, Normandin, Bergh & Dawe, Michael G. Dawe and Brian D. Cronin for Defendants and Respondents.

\*         \*         \*

A plaintiff suing for malicious prosecution must establish the underlying action was terminated in her favor. To satisfy this element, if the underlying action was terminated by means other than trial, the termination must involve a determination on the merits of the case and specifically the malicious prosecution plaintiff's innocence of the alleged misconduct. (*Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 341-342 (*Casa Herrera*).)

The issue presented here is whether a dismissal by the court of the underlying action on collateral estoppel grounds can qualify as a favorable termination for purposes of a subsequent malicious prosecution claim. The trial court held it did not. The court therefore found the plaintiffs could not establish a probability of prevailing on their malicious prosecution claim, granted the defendants' special motions to strike the claim under the anti-SLAPP (strategic lawsuit against public participation) statute, and dismissed the complaint. In so ruling, the court relied on the only case on point, *JSJ Limited Partnership v. Mehrban* (2012) 205 Cal.App.4th 1512, 1527 (*JSJ*), which held "the successful invocation of the defense of res judicata in the underlying claim is *not* a determination on the merits for purposes of a malicious prosecution action." (Italics added.)

As discussed hereafter, we decline to follow the rule articulated in *JSJ*. A dismissal on collateral estoppel grounds can occur for a number of reasons, including the fact that the same issue was already litigated and decided *on the merits* in an earlier proceeding. Thus, when ruling on an anti-SLAPP motion attacking a malicious prosecution claim that arises out of another lawsuit that was dismissed on collateral estoppel grounds, a trial court should look behind the collateral estoppel ruling in the prior case to determine what the rationale for that ruling was. If, in that earlier proceeding, the party's lack of culpability on the disputed issue was argued, litigated, and decided on the merits, the dismissal of the subsequent case on collateral estoppel grounds qualifies as a favorable termination for purposes of a later malicious prosecution claim.

2

We have seen this convoluted case before. The original dispute focused on whether an attorney and her law firm could represent a limited liability company (LLC) in a lease dispute with its tenant, who also happened to be a member and co-owner of the LLC. The tenant claimed the LLC could not retain counsel or litigate the lease dispute without his consent because he was a 50 percent co-owner of the LLC. An arbitrator found the LLC's retention of counsel and prosecution of the dispute were permissible, and the trial court confirmed the arbitration award. We affirmed (Case 1). The tenant then filed an action for declaratory relief against the LLC's attorneys (Case 2), seeking a declaration they could not represent the LLC without his consent. The trial court (the same judge who presided over Case 1) sustained the LLC's attorneys' demurrer in Case 2 without leave and granted their anti-SLAPP motion, citing the collateral estoppel effect of Case 1. The LLC's attorneys then filed the instant malicious prosecution action (Case 3) against the tenant and his attorneys, who each filed anti-SLAPP motions. Relying on *JSJ*, the trial court (again, the same judge as in Case 1 and Case 2) granted their anti-SLAPP motions, finding the attorney-plaintiffs could not establish a favorable termination of Case 2 and thus could not establish a probability of prevailing on their malicious prosecution claim.

We reverse that portion of the trial court's order and remand this matter for further proceedings.[1] Whether the attorneys could represent the LLC was litigated at length and decided on the merits in Case 1; that is precisely why the attorneys won in Case 2. The basis for the dismissal on collateral estoppel grounds in Case 2 was not technical or procedural; it was based on the merits (or lack thereof) of Case 2. The attorney-plaintiffs therefore established a termination of Case 2 in their favor. On

---

[1] The complaint also included a fraud claim against the tenant, and the trial court granted the anti-SLAPP motion as to that claim as well. The attorney-plaintiffs do not challenge that portion of the order, and we therefore affirm it without further discussion.

3

remand, the trial court should complete its prong two anti-SLAPP analysis and consider whether the attorney-plaintiffs established a probability of prevailing on the other elements of their malicious prosecution claim.

## FACTS

The following facts are taken from the complaint, declarations, and other evidence submitted on the special motions to strike, along with our prior opinions in the underlying matters. (See *Newport Harbor Offices & Marina, LLC v. McNaughton* (Sept. 5, 2014, G047424, G048095) [nonpub. opn.] (*NHOM 1*); *Newport Harbor Offices & Marina, LLC v. Kent A. McNaughton and Associates* (June 29, 2017, G052704, G052984) [nonpub. opn.] (*NHOM 2*).)

1.    *The Parties' Dispute Concerning Rent and NHOM's Ability to Hire Counsel without McNaughton's Consent*

Paul Copenbarger and Kent McNaughton formed Newport Harbor Offices & Marina, LLC (NHOM) in 2003 to acquire an office building in Newport Beach. McNaughton and Copenbarger were equal owners and the sole members of NHOM.

In NHOM's operating agreement, Copenbarger delegated to McNaughton "management of the day-to-day operations of the commercial real property owned by the Company," and McNaughton delegated to Copenbarger "management and handling of all legal affairs of the Company." These delegations were "[s]ubject to revocation" by the delegating members.

McNaughton later leased several office suites in NHOM's building for his separate real estate business. McNaughton signed the rental agreement on behalf of both himself and NHOM.

4

In early 2008, after learning McNaughton had unilaterally increased his monthly NHOM management payments to himself from $10,000 to $15,000, Copenbarger revoked McNaughton's delegated authority to manage NHOM's day-to-day operations. In response, McNaughton stopped paying rent to NHOM.

2.     *Case 1:  Litigation Over the Lease Dispute and NHOM's Ability to Hire Alston as Counsel*

NHOM hired attorney Elaine Alston (Ms. Alston) and her firm, Alston, Alston & Diebold (collectively, Alston), to file unlawful detainer actions against McNaughton. McNaughton, through his counsel, advised Alston that their purported engagement agreement with NHOM was "'illegal and ineffective.'" Undeterred, Alston continued to represent NHOM in the unlawful detainer actions.

McNaughton then initiated an arbitration against Copenbarger in accordance with the arbitration provision in NHOM's operating agreement. He sought a declaration that NHOM could not validly pursue the unlawful detainer actions against him without his express consent, Copenbarger could not unilaterally authorize the filing, and Copenbarger had breached his fiduciary duty by causing NHOM to file the unlawful detainer actions against McNaughton.

In June 2008, while the unlawful detainer actions and arbitration (collectively, Case 1) were pending, McNaughton formally revoked Copenbarger's delegated right to manage NHOM's legal affairs. He also filed a motion to compel arbitration of the lease dispute. In granting the motion, the trial court reasoned the dispute boiled down to a disagreement between Copenbarger and McNaughton and would be most efficiently resolved in the pending arbitration. It therefore stayed the unlawful detainer actions pending the outcome of that arbitration.

The arbitrator issued an interim award in 2011. He found largely in Copenbarger's favor, concluding "Copenbarger had the authority to initiate, approve and

5

ratify the legal enforcement actions undertaken by the LLC against McNaughton for refusal to pay rents for 3 months," and "Copenbarger had both the duty and responsibility to initiate and prosecute an action against a delinquent tenant even if that tenant was a 50% member of the LLC." He further found McNaughton had breached his leases with NHOM by improperly withholding rent. The arbitrator later issued a final award incorporating the terms of his interim award without change.

Copenbarger filed a petition to confirm the arbitration award with the trial court, and McNaughton filed a motion to disqualify Alston. The court denied McNaughton's disqualification motion, granted Copenbarger's petition to confirm the arbitration award, and confirmed the award in all respects. The court then conducted a trial on damages, found McNaughton liable to NHOM for $14,283, and entered a judgment against McNaughton.

3. *Our First Opinion in Case 1 (*NHOM 1*)*

McNaughton appealed, asserting NHOM could not pursue litigation against him without his consent because NHOM is a distinct legal entity of which he owns 50 percent. NHOM cross-appealed, asserting the damages award was too low.

While the cross-appeals were pending, McNaughton filed a motion in this court to disqualify Alston and dismiss NHOM's cross-appeal on the grounds that McNaughton had not consented to Alston representing NHOM. We summarily denied the motion.

In 2014, we affirmed the judgment against McNaughton, subject to modifications not relevant here. We concluded "McNaughton's assertion that the arbitrator 'exceeded his jurisdiction' border[ed] on the specious." As for Copenbarger's ability to pursue litigation on behalf of NHOM against McNaughton without his consent, we concluded the NHOM operating agreement expressly "delegat[ed] to Copenbarger exclusive authority to handle NHOM's 'legal affairs.' NHOM's choice to pursue

6

litigation—against McNaughton or anyone else—falls squarely within that authority and thus the arbitrator properly concluded Copenbarger had 'both the duty and responsibility to initiate and prosecute an action against a delinquent tenant . . . .'" (*NHOM 1, supra,* G047424, G048095.)

We went on: "And of course, the fact [Copenbarger's] delegated authority over legal affairs was *revocable* changes nothing, since McNaughton failed to actually revoke it until *after* NHOM had already filed the lease dispute. At that point, the revocation could accomplish nothing more than to ensure that any *future* changes in NHOM's litigation strategy—such as a decision to dismiss or settle the case—would likely have required the consent of *both* Copenbarger and McNaughton." (*NHOM 1, supra,* G047424, G048095.)

We also noted the arbitrator impliedly found "Copenbarger had the authority to approve the selection of counsel to represent NHOM in that dispute," and therefore declined to address McNaughton's contention that "Alston 'was never effectively engaged by NHOM.'" (*NHOM 1, supra,* G047424, G048095.)

McNaughton petitioned for review by the California Supreme Court, but his petition was denied.

On remand, NHOM moved for an award of attorney fees against McNaughton under Civil Code section 1717. In denying the motion, the trial court determined there was no prevailing party for purposes of section 1717 because the amount awarded to NHOM was much less than it sought. NHOM appealed that order.

4.    *Case 2:  McNaughton's Action for Declaratory Relief*

While NHOM's appeal of the postjudgment fees order in Case 1 was pending, McNaughton filed an action seeking declaratory relief against Alston, the attorneys who had represented NHOM in Case 1 (Case 2). In his original complaint, McNaughton vaguely alleged Alston was impermissibly representing NHOM "in various

7

[unspecified] litigation matters in which NHOM has putatively taken a position adverse to McNaughton," and he sought a declaration that Alston "neither [is], nor ever [was] legally engaged as counsel for NHOM, and do[es] not, as a matter of law, represent NHOM, despite their persistent contentions to the contrary."

McNaughton's first amended complaint was more detailed. He defined the "various litigation matters" to include Case 1 and NHOM's pending appeal of the fees order. He further alleged he never consented to Alston acting as counsel for NHOM in Case 1; he formally revoked Copenbarger's delegated right to manage NHOM's legal affairs in June 2008, yet Alston continued to represent and bill NHOM, of which he owned 50 percent, for their work on Case 1.

McNaughton acknowledged he unsuccessfully challenged Alston's authority to bring the unlawful detainer actions in Case 1, but insisted his position was "[c]onsistent with" this court's 2014 opinion in *NHOM 1*, in which we observed McNaughton's June 2008 revocation of Copenbarger's delegated right to manage NHOM's legal affairs "could . . . ensure that any *future* changes in NHOM's litigation strategy—such as a decision to dismiss or settle the case—would likely have required the consent of *both* Copenbarger and McNaughton." Selectively citing that sentence in our 2014 opinion, McNaughton alleged Alston was improperly seeking attorney fees for work that *postdated* his June 2008 revocation of Copenbarger's delegated right to manage NHOM's legal affairs. He thus sought a declaration that Alston "neither [is], nor ever [was] legally engaged as counsel for NHOM *since June 2008*, and do[es] not, as a matter of law, represent NHOM, despite their persistent contentions to the contrary." (Italics added.)

Alston filed a demurrer and special motion to strike the first amended complaint. The trial court (the same judge who presided over Case 1) sustained the demurrer without leave to amend and granted the motion to strike on collateral estoppel

8

grounds.[2]  In sustaining Alston's demurrer, the court reasoned, "If the Court of Appeal wanted to find that [Alston] had no authority for continued representation, it would have found so in its September 2014 Appellate opinion [in Case 1]; [McNaughton] is re-litigating this same issue—he is contending the representation is continuing in the same underlying [case]."

The court also granted Alston's anti-SLAPP motion, reasoning:  "[The] Court of Appeal ruled that [Alston] had a right to represent NOHM in the underlying case; [t]he continuation of litigation in the underlying case, is not alleged to be a changed strategy, but rather a continuation of the already condoned legal representation and validation of court orders during that litigation; [and McNaughton] has not shown a probability of prevailing on the merits."

The trial court entered a judgment for Alston.  McNaughton did not appeal.

5.      *Our Second Opinion in Case 1 (*NHOM 2*)*

Three weeks later, we issued our opinion in NHOM's appeal from the postjudgment order denying NHOM's motion for attorney fees in Case 1.  Finding no abuse of discretion, we affirmed the order.  (*NHOM 2, supra*, G052704, G052984.)

We then explained at length how misleading and ingenuous McNaughton's arguments were in *NHOM 2* and expressed frustration with McNaughton's attempts to relitigate the issue of NHOM's ability to retain counsel.  We noted "the bulk of

---

[2]      Collateral estoppel, sometimes called issue preclusion, "prohibits the relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action. [Citation.]  Under issue preclusion, the prior judgment conclusively resolves an issue actually litigated and determined in the first action. [Citation.]  There is a limit to the reach of issue preclusion, however.  In accordance with due process, it can be asserted only against a party to the first lawsuit, or one in privity with a party." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824 (*DKN*).)  The doctrine "applies (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." (*Id.* at p. 825.)

9

McNaughton's 47-page brief [was] devoted to rehashing his contention that because he is a 50 percent owner of NHOM, its counsel could not have been authorized to represent it, or to pursue any litigation against him, absent his own consent. Although this contention was squarely rejected by the arbitrator, and the rejection was expressly endorsed by this court in the prior appeal, McNaughton persists—going so far as to selectively quote from our prior opinion in an effort to persuade us it supports the opposite conclusion from the one we reached. He does this while simultaneously excoriating NHOM's counsel for her supposedly questionable ethics and integrity, and lamenting the enormous waste of resources this 'sorry saga' has occasioned. [¶] McNaughton's effort accomplishes nothing more than to inspire some regret we must affirm the court's order denying NHOM its requested fees." (*NHOM 2, supra,* G052704, G052984.)

We also criticized McNaughton's attempts to misconstrue our holding in *NHOM 1*: "[In *NHOM 1*, we] point[ed] out if McNaughton had validly revoked Copenbarger's delegated authority over NHOM's legal affairs following its initiation of the lease dispute against him, revocation would 'change[ ] nothing.' [Citation.] Instead, we said such a 'revocation could accomplish nothing more than to ensure that any *future changes* in NHOM's litigation strategy—such as a decision to dismiss or settle the case—would likely have required the consent of *both* Copenbarger and McNaughton.' [Citation.] Our point was even if McNaughton had regained the right to participate in future decisions concerning NHOM's pursuit of litigation—an issue we did not specifically address—*that would still not have empowered him to upset the status quo in an ongoing case*. It would only be future *changes* in litigation strategy, such as a decision to dismiss or settle such a case, that McNaughton might claim a right to participate in. *In no way did we suggest that by rescinding Copenbarger's sole authority over litigation, McNaughton could deny NHOM authority to continue on the course it had already set, which in this case was to pursue the lease dispute against him.*" (*NHOM 2, supra,* G052704, G052984, italics added.)

10

We continued, "Unfortunately, McNaughton was likewise undaunted by our opinion. Rather than acknowledge what we said, he attempted to suggest it meant the opposite of what we intended—i.e., once he had rescinded his delegation of litigation authority over NHOM to Copenbarger, he could thereafter unilaterally 'disapprove[ ] any [further] litigation conduct by NHOM under the putative representation of [it's [*sic*] counsel].' Indeed, McNaughton went so far as to selectively quote language from our opinion back to us in his current respondent's brief, claiming we had previously concluded once he rescinded his prior delegation of authority to Copenbarger, 'all subsequent "litigation strategy"' in NHOM's case against him would likely have required his consent. Not that '*changes* in NHOM's litigation strategy—such as a decision to dismiss or settle the case,' might require his consent, which is what we said, but that *all* strategy would. [¶] And having misrepresented what we said, McNaughton then asserted our supposed conclusion 'qualifies as 'law of the case' which retroactively voided all the work done by NHOM's counsel in this case since June 2008—thus precluding counsel's recovery of any fees for those years of work. This assertion is disingenuous and specious." (*NHOM 2, supra,* G052704, G052984.)

We further noted McNaughton's attempts to "undermine the authority of NHOM's counsel to continue pursuing this litigation against him" were "unreasonably zealous." (*NHOM 2, supra,* G052704, G052984.) In the end, however, "given NHOM's limited success in achieving its objectives in the lease dispute," we affirmed the trial court's order denying NHOM's fees motion, finding no abuse of discretion. (*Ibid.*)

6.  *Case 3: Alston's Malicious Prosecution Action*

One year later, Alston filed the instant action against McNaughton and his attorneys in Case 2, Michael G. Dawe and Prenovost, Normandin, Bergh & Dawe (collectively, Prenovost), asserting claims for malicious prosecution based on Case 2 and

11

fraud.[3] Alston's complaint detailed various evidence of McNaughton's and Prenovost's alleged acts of malice against Alston, including making numerous disparaging remarks about Ms. Alston over the years, calling her a "'rogue' attorney" in numerous filings and hearings, expressing pleasure over the fact Alston had not been paid for most of the work for NHOM, and submitting a complaint about Ms. Alston to the California State Bar. According to Ms. Alston, McNaughton and Prenovost's prosecution of Case 2 damaged her reputation, bankrupted her and her firm, forced them to incur attorney fees in defending themselves, caused emotional distress and anxiety, created a conflict between her and her firm, increased their cost of insurance, and caused difficulty in obtaining financing.

McNaughton and Prenovost each filed anti-SLAPP motions. Among other arguments, they asserted Alston could not establish a probability of prevailing on their malicious prosecution claim because the trial court's ruling in Case 2 was based on collateral estoppel grounds, thus barring Alston from establishing the element of a favorable termination of the underlying action. They both relied on *JSJ, supra,* 205 Cal.App.4th at p. 1527, which held "the successful invocation of the defense of res judicata in the underlying claim is not a determination on the merits for purposes of a malicious prosecution action."

The trial court (again the same judge as in the prior cases) issued a tentative ruling granting the anti-SLAPP motions. On the malicious prosecution claim, evidently relying on the *JSJ* case, the court reasoned: "Alston cannot show favorable termination of the underlying action [Case 2]; [t]his Court clearly ruled on the basis of the Court of Appeal's decision in the prior action [Case 1]—the basis of this ruling [in Case 2] was

_____

[3] The fraud claim named only McNaughton as a defendant and alleged McNaughton misrepresented in Case 1 that he was a managing member of NHOM and held a 50 percent ownership interest in NHOM, when in fact he allegedly transferred his interest in NHOM to a third party.

12

collateral estoppel."  The court did not address Alston's probability of succeeding on the other elements of their malicious prosecution claim.[4]

Following oral argument, the trial court adopted its tentative ruling without change and granted the anti-SLAPP motions.  It then entered a judgment of dismissal in favor of McNaughton and Prenovost.  Alston appealed.

## DISCUSSION

### 1.  *The Anti-SLAPP Statute*

The Legislature enacted the anti-SLAPP statute to address "what are commonly known as SLAPP suits (strategic lawsuits against public participation)— litigation of a harassing nature, brought to challenge the exercise of protected free speech rights." (*Fahlen v. Sutter Central Valley Hospitals* (2014) 58 Cal.4th 655, 665, fn. 3.) The statute authorizes a special motion to strike meritless claims early in the litigation if the claims "aris[e] from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue."  (Code Civ. Proc., § 425.16, subd. (b)(1).)

When evaluating a special motion to strike, the trial court must engage in a two-step process.  "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. . . .  If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.)  "Only a cause of action that satisfies

---

[4]  The trial court also granted McNaughton's anti-SLAPP motion as to the fraud cause of action.  In its tentative, the court explained the claim was "based on statements made in and in connection with the underlying litigation; [t]he statements are both protected and privileged; [and Alston] cannot show a probability of prevailing on the merits."

*both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.) We review a trial court's order denying an anti-SLAPP motion de novo. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325.)

2. *Step One: Protected Activity*

Step one of the anti-SLAPP analysis requires us to decide whether Alston's challenged malicious prosecution claim arose from an act in furtherance of McNaughton's and Prenovost's right of petition or free speech. (Code Civ. Proc., § 425.16, subd. (b)(1); see *id.*, subd. (e) [defining protected activity].) Alston concedes the filing and prosecution of Case 2 qualifies as protected activity, and rightly so. "[E]very Court of Appeal that has addressed the question has concluded that malicious prosecution causes of action fall within the purview of the anti-SLAPP statute." (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 735.)

3. *Step Two: Probability of Prevailing*

We therefore turn to step two of the anti-SLAPP analysis, in which Alston must demonstrate a probability of prevailing on the malicious prosecution claim. "'[T]he plaintiff's burden of establishing a probability of prevailing is not high: We do not weigh credibility, nor do we evaluate the weight of the evidence. Instead, we accept as true all evidence favorable to the plaintiff and assess the defendant's evidence only to determine if it defeats the plaintiff's submission as a matter of law. [Citation.] Only a cause of action that lacks "even minimal merit" constitutes a SLAPP. [Citation.]' [Citation.] 'Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."'" (*Greene v. Bank of America* (2013) 216 Cal.App.4th 454, 458, fn. omitted.)

14

The sole cause of action at issue in this appeal is Alston's malicious prosecution claim. "To prevail on a malicious prosecution claim, the plaintiff must show that the prior action (1) was commenced by or at the direction of the defendant and *was pursued to a legal termination favorable to the plaintiff*; (2) was brought without probable cause; and (3) was initiated with malice." (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 292, italics added.) As noted, the trial court's ruling hinged on the first element—a termination of Case 2 in Alston's favor.

A.    *The Favorable Termination Element*

Our Supreme Court has summarized the favorable termination element as follows: "'[i]t is hornbook law that the plaintiff in a malicious prosecution action must plead and prove that the prior judicial proceeding of which he complains terminated in his favor.'" (*Casa Herrera, supra,* 32 Cal.4th at p. 341.) "'The theory underlying the requirement of favorable termination is that it tends to indicate the innocence of the accused'" in the underlying action. (*Ibid*.)

"To determine 'whether there was a favorable termination,' we 'look at the judgment as a whole in the prior action . . . .' [Citation.] 'It is not essential to maintenance of an action for malicious prosecution that the prior proceeding was favorably terminated following trial on the merits.' [Citation.] Rather, '[i]n order for the termination of a lawsuit to be considered favorable to the malicious prosecution plaintiff, the termination *must reflect the merits of the action and the plaintiff's innocence of the misconduct alleged in the lawsuit*.'" (*Casa Herrera, supra,* 32 Cal.4th at pp. 341-342, italics added.)

"For example, a termination is favorable for malicious prosecution purposes where the court in the underlying action: (1) granted summary judgment and issued sanctions because the claim was meritless [citation]; (2) granted summary judgment because there was insufficient evidence to establish a triable issue of fact [citation]; or (3) held that the defendant, as a matter of law, violated no duty to the

15

plaintiff [citation].” (*Casa Herrera, supra,* 32 Cal.4th at p. 342.)  Similarly, “[a] voluntary dismissal is presumed to be a favorable termination on the merits unless proved otherwise to a jury because the natural assumption is that one does not simply abandon a meritorious action.” (*Olivares v. Pineda* (2019) 40 Cal.App.5th 343, 354 (*Olivares*).)

On the other hand, ‘“[i]f the termination does not relate to the merits— reflecting on neither innocence of nor responsibility for the alleged misconduct—the termination is not favorable in the sense it would support a subsequent action for malicious prosecution.’ [Citation.]  Thus, a ‘technical or procedural [termination] as distinguished from a substantive termination’ is not favorable for purposes of a malicious prosecution claim.  [Citation.]  Examples include dismissals (1) on statute of limitations grounds [citations]; (2) pursuant to a settlement [citation]; or (3) on the grounds of laches [citation].” (*Casa Herrera, supra,* 32 Cal.4th at p. 342; see also *Warren v. Wasserman, Comden & Casselman* (1990) 220 Cal.App.3d 1297, 1302 (*Warren*) [“Termination of a prior action by a successful statute of limitations defense is not a favorable termination since it does not reflect on the merits of the prior action”].)  Other examples of technical or procedural terminations that would not support a malicious prosecution claim include dismissals “(1) for lack of jurisdiction [citation]; (2) for being moot [citation]; (3) for lack of standing [citation]; (4) for being premature [citation]; and (5) for avoiding litigation expenses [citation].” (*JSJ, supra*, 205 Cal.App.4th at p. 1525.)  In all these examples, the terminations are wholly unrelated to the defendant’s innocence or guilt for the alleged misconduct.

B. *A Dismissal on Collateral Estoppel Grounds May Qualify as a Favorable Termination*

We must decide whether a termination of the underlying action on collateral estoppel grounds qualifies as a favorable termination for purposes of a subsequent malicious prosecution claim.  The California Supreme Court has never

addressed the issue, and the only published appellate opinion on point is *JSJ*,[5] which held "the successful invocation of the defense of res judicata in the underlying claim is not a determination on the merits for purposes of a malicious prosecution action" because res judicata is a procedural defense. (*JSJ, supra,* 205 Cal.App.4th at p. 1527.) Although the trial court was bound to follow *JSJ*, the case is not binding on us. (See *In re Marriage of Shaban* (2001) 88 Cal.App.4th 398, 409 ["intermediate appellate court precedent that might otherwise be binding on a trial court [citation] is not absolutely binding on a different panel of the appellate court"].)

Looking at the issue de novo, we conclude a termination of the underlying action on collateral estoppel grounds may or may not qualify as a favorable termination on the merits. It depends on what happened in the original case on which the collateral estoppel defense was based. If that earlier case involved a determination on the merits of a particular issue, and if the party's culpability on that issue was argued, litigated, and decided in that earlier case, then the termination of the second case on collateral estoppel grounds is reflective of the merits of that case and qualifies as a favorable termination for purposes of a later malicious prosecution claim.

Collateral estoppel does not always reflect a finding on the merits or a determination of guilt or innocence, however. An earlier ruling sometimes has a collateral estoppel effect even though it is purely technical or procedural in nature. For example, California "accords collateral estoppel effect to default judgments, at least where the judgment contains an express finding on the allegations." (*Gottlieb v. Kest* (2006) 141 Cal.App.4th 110, 149.) Similarly, "a stipulated judgment may properly be

_____

[5]      McNaughton and Prenovost argue *Dalany v. American Pacific Holding Corp.* (1996) 42 Cal.App.4th 822, 829 (*Dalany*) is also directly on point. We disagree. *Dalany* held a settlement and stipulated judgment in an underlying action do not constitute a favorable termination to support a subsequent malicious prosecution claim; it did not involve a dismissal on res judicata or collateral estoppel grounds.

17

given collateral estoppel effect, at least when the parties manifest an intent to be collaterally bound by its terms." (*California State Auto. Assn. Inter-Ins. Bureau v. Superior Court* (1990) 50 Cal.3d 658, 664.) Of course, a default judgment or a stipulated judgment is not necessarily indicative of a party's culpability on a given issue.

Thus, in evaluating whether a termination of the underlying action on collateral estoppel grounds qualifies as a favorable termination to support a malicious prosecution claim, courts must look behind the collateral estoppel dismissal, evaluate what happened in the original case that formed the basis for the collateral estoppel ruling, and determine whether the party's culpability on that issue was argued, litigated, and decided on the merits in that earlier case. If it was, the dismissal of the second action on collateral estoppel grounds qualifies as a favorable termination for purposes of a later malicious prosecution claim. If, on the other hand, the first judgment was *not* based on the actual merits of that case but nevertheless had a collateral estoppel effect (e.g., if the first case ended via stipulated judgment, default judgment, or for other technical or procedural reasons), the dismissal of the second action on collateral estoppel grounds presumably would not qualify as a favorable termination in a later malicious prosecution claim because the original judgment was not a determination of the merits.

C.      *Disapproval of* JSJ

We recognize the test we articulate above runs contrary to *JSJ,* which held "the successful invocation of the defense of res judicata in the underlying claim is *not* a determination on the merits for purposes of a malicious prosecution action." (*JSJ, supra,* 205 Cal.App.4th at p. 1527, italics added.) We do not find *JSJ's* analysis persuasive.

The relevant facts of *JSJ* were as follows. Alfredo Garcia was a disabled restaurant patron who sued JSJ, a commercial landlord, for violations of Civil Code sections 54 and 54.1 based on Garcia's alleged inability to use the property's restrooms. Following a court trial, the trial court entered judgment for JSJ. (*JSJ, supra,* 205 Cal.App.4th at pp. 1516-1517.) A year later, Garcia filed a second action against JSJ

18

alleging violations of Civil Code sections 51, 54, and 54.1 based on the configuration of JSJ's parking lot. The trial court sustained JSJ's demurrer with leave to amend on res judicata grounds, but rather than amending his complaint, Garcia dismissed the action without prejudice. (*Id.* at pp. 1517-1518.) JSJ then sued Garcia and his attorney for malicious prosecution. Garcia's attorney filed an anti-SLAPP motion; the trial court denied the motion, and the attorney appealed. (*Id.* at pp. 1518-1519.)

The appellate court reversed, finding the attorney's anti-SLAPP motion should have been granted. The court began by observing the question of "[w]hether a ruling that a claim barred by the doctrine of res judicata and dismissed based on that ruling results in a favorable termination for a malicious prosecution action is not an easy issue. It might seem that the disposal of a claim by the doctrine of preclusion has been favorably terminated." (*JSJ, supra,* 205 Cal.App.4th at p. 1525.) Ultimately, however, the court concluded res judicata is necessarily a *procedural defense*, likening res judicata to a statute of limitations defense, and thus not reflective of a case's merits. (See *id.* at pp. 1525-1527, citing *Warren, supra,* 220 Cal.App.3d at p. 1303 for notion that a resolution based on the statute of limitations "does not constitute a favorable termination because it does not reflect on the merits of the action.")

The *JSJ* court reasoned: "Res judicata, as the statute of limitations, is a defense that does not go to the substantive merits of the claim. Neither is it a determination of the actual 'innocence' of a party." (*JSJ, supra,* 205 Cal.App.4th at p. 1525.) It is "not concerned with the actual merits of a prior adjudication but solely with the need for finality." (*Id.* at pp. 1525-1256.) "[T]he doctrine is an affirmative defense, which as a matter of procedure, bars the claim—just as the statute of limitations does—whether the claim is meritorious or not." (*Id.* at p. 1526.) Thus, "the successful invocation of the defense of res judicata in the underlying claim is not a determination on the merits for purposes of a malicious prosecution action." (*Id.* at p. 1527.) If JSJ wanted to pursue a malicious prosecution action against Garcia, concluded the court, it

19

should have "'eschew[ed] the procedural defense, forgo[ne] the easy termination, and obtain[ed] a favorable judgment on the merits.'" (*Ibid*. [quoting *Warren, supra,* 220 Cal.App.3d at p. 1303].)

We disagree with this analysis. True, res judicata and collateral estoppel are procedural concepts and affirmative defenses. Both are often more concerned with the need for finality and avoiding relitigation of issues than with the actual merits of the earlier case. (*Rodgers v. Sargent Controls & Aerospace* (2006) 136 Cal.App.4th 82, 88 ["preclusion of relitigation of *claims* pursuant to the principles of *res judicata* is an affirmative defense that must be pled or otherwise raised in the trial court to avoid waiver"]; *Dalany*, *supra,* 42 Cal.App.4th at p. 829 ["Res judicata and collateral estoppel . . . are not concerned with the actual merits of a prior adjudication but solely with the need for finality"].)

But that is not to say res judicata and collateral estoppel rulings are always unrelated to the merits of a given claim or issue. Collateral estoppel, by definition, "prohibits the relitigation of issues argued and decided in a previous case." (*DKN, supra,* 61 Cal.4th at p. 824.) In this way, it differs from a statute of limitations defense, which considers only the timeliness of the plaintiff's suit and not the defendant's culpability. Cases holding that a resolution on statute of limitations grounds is not a favorable termination (see, e.g., *Warren, supra,* 220 Cal.App.3d at pp. 1302-1303) are thus inapposite.

Moreover, if an issue was previously litigated in another case and a party's culpability on that issue was decided on the merits, it is illogical to require that party to "'eschew'" her collateral estoppel defense in the second case, as *JSJ* mandates, and to litigate the issue *again* to a favorable judgment on the merits, simply so she may later meet the favorable termination element of her malicious prosecution claim. Such a rule is inconsistent with one of the main purposes of the doctrines of res judicata and

20

collateral estoppel: promoting judicial economy and conserving judicial resources. (See *Proctor v. Vishay Intertechnology, Inc*. (2013) 213 Cal.App.4th 1258, 1272.)

Further, requiring trial courts to look behind the collateral estoppel ruling and consider the procedural history of the underlying litigation is consistent with our Supreme Court's instruction that we "'look at the judgment as a whole in the prior action'" and evaluate whether the termination "'reflect[s] the merits of the action and the plaintiff's innocence of the misconduct alleged in the lawsuit'" when considering whether the favorable termination element was met. (See *Casa Herrera, supra,* 32 Cal.4th at pp. 341-342; see also *Olivares, supra,* 40 Cal.App.5th at p. 354 [we should "examine[] the record [of the underlying case] to see if the disposition reflects the opinion of the court . . . that the [underlying] action would not succeed"].) We therefore disapprove of and decline to follow the bright line rule adopted in *JSJ*.

D.     *Application*

Against that backdrop, we turn to the precise issue presented here: does the termination of Case 2 on collateral estoppel grounds based on Case 1 qualify as a favorable termination for purposes of Case 3? Based on the procedural history of the three cases, we find it does.

The issue of NHOM's ability to retain Alston and to prosecute the lease dispute against McNaughton without McNaughton's consent was extensively litigated and decided on the merits in Case 1. The arbitrator found Copenbarger properly hired Alston as counsel for NHOM to initiate and prosecute the unlawful detainer actions against McNaughton; the trial court confirmed the arbitration award and denied McNaughton's motion to disqualify Alston; we denied McNaughton's motion to disqualify Alston in the subsequent appeal; and in *NHOM 1,* we affirmed the judgment against McNaughton and explicitly endorsed the arbitrator's findings.[6] The litigation of

---

[6]     Additionally, in *NHOM 2* (which we decided *after* the trial court entered judgment for Alston in Case 2), we criticized McNaughton for "rehashing his contention

21

the issue in Case 1 is precisely why Alston won in Case 2. Thus, the dismissal of Case 2 on collateral estoppel grounds was not purely procedural; it reflected the merits (or lack thereof) of Case 2.[7] We therefore conclude Alston established a termination of Case 2 in their favor for purposes of the malicious prosecution claim in Case 3.

Consequently, we reverse the dismissal and the portion of the trial court's order granting the anti-SLAPP motions on the malicious prosecution claim and remand this matter for further consideration of the second prong of the anti-SLAPP statute. The court's ruling did not address Alston's probability of succeeding on the other elements of the malicious prosecution claim or Alston's evidentiary objections, and we decline to consider those matters in the first instance. (See *Collier v. Harris* (2015) 240 Cal.App.4th 41, 58 [noting most appellate courts decline to decide prong two in the first instance].) "We think it best that the able and experienced trial judge decide the issue" first. (*Ibid.*)

### DISPOSITION

The portion of the trial court's order granting McNaughton's anti-SLAPP motion as to Alston's fraud claim is affirmed. The portion of the order granting McNaughton's and Prenovost's anti-SLAPP motions as to Alston's malicious prosecution claim is reversed. The matter is remanded for further proceedings consistent

_____

that because he is a 50 percent owner of NHOM, its counsel could not have been authorized to represent it, or to pursue any litigation against him, absent his own consent," when that contention was already "squarely rejected by the arbitrator, and the rejection was expressly endorsed by this court in the prior appeal." (*NHOM 2, supra,* at G052704, G052984.)

[7] In light of this holding, we do not address Alston's argument that a party may sue for malicious prosecution "when a knowingly ill-founded suit brought only to harass or vex the defendant fails for procedural reasons." (See *Lackner v. LaCroix* (1979) 25 Cal.3d 747, 752, fn. 3 [declining to decide that issue].) As discussed above, Case 2 did not fail "for procedural reasons"; it failed on the merits.

22

with this opinion.  Alston shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)


GOETHALS, J.

WE CONCUR:


O'LEARY, P. J.


MOORE, J.