187 Cal.App.4th 543 (2010)
114 Cal. Rptr. 3d 16
Estate of JAMES DONALD GARDNER, Jr., Deceased.
ADRIA E. UNDERWOOD, Petitioner and Appellant,
v.
VALERIE PEARCE et al., Objectors and Respondents.
No. F058001.
Court of Appeals of California, Fifth District.
August 11, 2010.
*545 Dowling, Aaron & Keeler, Lynne Thaxter Brown and Stephanie Hamilton Borchers for Petitioner and Appellant.
Wild, Carter & Tipton, Richard A. Harris, Thomas A. Markeson and David A. Yengoyan for Objector and Respondent Valerie Pearce.
Kimble, MacMichael & Upton, Jon Wallace Upton and Mary Ann Bluhm for Objectors and Respondents Danielle Francine Ricchiuti and Mari Ann Ricchiuti.

OPINION
WISEMAN, Acting P. J.
This case involves the disposition of approximately $2 million from the estate of James Donald Gardner, Jr. (decedent). Appellant contends that the money should go to her and to her daughter, decedent's mother and sister, respectively, because that was decedent's intent, although he failed to complete the necessary paperwork before he died. Respondents, decedent's ex-wives and children, contend that the money should go to decedent's children. On appeal, appellant contends that the probate court erred in sustaining respondents' demurrer without leave to amend. For the following reasons, we reverse.

*546 FACTUAL AND PROCEDURAL HISTORIES

On January 23, 2009, appellant Adria E. Underwood filed a first amended petition for an order determining ownership of property under Probate Code section 850[1] or alternatively for an order to determine the existence of an oral trust under section 5302. In the petition, she alleged that she is the mother of decedent, who died intestate on October 11, 2006. She listed those persons with possible interests in decedent's estate as herself, Valda Pollard (decedent's sister), Carmia Eldridge (decedent's sister), Danielle Ricchiuti (decedent's minor daughter), Mari Ann Ricchiuti (decedent's ex-spouse and legal guardian of his daughter), James D. Gardner, III (decedent's minor son), and Valerie Pearce (decedent's ex-spouse and legal guardian of his son).
Appellant alleged that decedent received approximately $2.5 million as a settlement for a personal injury lawsuit. He deposited about 80 percent of these settlement proceeds in two brokerage accounts. On June 14, 2006, he opened an account with Atlas Funds and deposited the sum of $1,008,661.80 into the Atlas account. On June 19, 2006, he opened an account at Wells Fargo Investments, LLC, and deposited the sum of $1,008,661.88 into the Wells Fargo account.
Appellant further alleged that decedent completed and executed the necessary documentation for the Atlas account to be registered as a "Payable on Death" (POD) account, with appellant and decedent's sister, Carmia Eldridge, as equal beneficiaries of the account in the event of his death. Decedent told his Wells Fargo advisor, Richard Roush, that he wished to set up the same type of account for the Wells Fargo account. However, decedent subsequently was informed that one of his former spouses was a Wells Fargo employee. Appellant alleged that decedent became concerned when he found this out and "elected to withdraw the entirety of the funds on July 21, 2006, and transfer them to Wachovia Securities." In September 2006, decedent signed paperwork to electronically transfer funds in the Atlas account to Wachovia. Appellant alleged that she "is informed, believes and thereon alleges the P.O.D. terms (or, alternatively, the Totten trust terms) were maintained as part of the transfer to Wachovia."
Appellant alleged that decedent expressed an intent that the funds be held for the benefit of his mother and sister, and that, in response to decedent's directions, Wachovia staff subsequently prepared an "`Application for Registration of Account in Beneficiary Form Transfer on Death Direction,'" which confirmed that appellant and Eldridge were equal beneficiaries of the Wachovia funds. Appellant, however, died before he could sign the application. Nevertheless, appellant contended that she and Eldridge were the rightful owners of the *547 funds deposited by decedent with Wachovia, either because decedent "maintained and/or created a Totten trust or POD account upon depositing the settlement proceeds at Wachovia Securities," or because decedent "created an express oral trust upon depositing the settlement proceeds at Wachovia Securities ...."
On February 23, 2009, Mari Ann Ricchiuti, on behalf of Danielle Ricchiuti, filed an opposition to appellant's petition. In her opposition, she contended that, because decedent never "completed and/or executed" the Wachovia paperwork, any intent to create POD accounts for the Wachovia accounts was never realized and the POD terms were not maintained as part of the transfer of the funds from the Atlas account. Moreover, decedent never established POD terms for the Wells Fargo account initially, so there was nothing to maintain or transfer when the monies in that account were transferred to Wachovia. She also contends that there was no clear and convincing evidence that decedent intended to create an express oral trust.
On February 25, 2009, Valerie Pearce, on behalf of James Gardner, III, filed a demurrer to appellant's petition. In the demurrer, Pearce contended that appellant failed to plead with certainty whether appellant's claim of the existence of a Totten trust or POD account is based upon "the terms of a written contract carried over from Decedent's Atlas account, an oral contract based upon Decedent's conversations with Wachovia Employees, or a contract implied by conduct when Wachovia drafted an `Application for Registration of Account in Beneficiary Form Transfer on Death Direction' that was never executed by Decedent." Pearce also asserted that appellant failed to state facts sufficient to establish that decedent intended to create an express oral trust.
On March 23, 2009, appellant filed her opposition to the demurrer. She contended that she had sufficiently pleaded the existence of a Totten trust or POD account and the creation of an oral trust. She asserted that any factual disputes should be resolved by trial or summary judgment.
On April 9, 2009, the probate court issued an order sustaining Ricchiuti's opposition to and sustaining Pearce's demurrer to appellant's first amended petition without leave to amend. The trial court first observed that, because the Wachovia account is a security account, the proper analysis should probably be under the "`Uniform T.O.D. ... Security Registration Act,'" section 5500 et seq., although the result would be the same as its analysis of the case under the California Multi-Party Accounts Law, section 5100 et seq. The court rejected the argument that the Wachovia account should be deemed a POD account because decedent intended to complete the POD paperwork *548 for the Wachovia account but failed to do so before he died. According to the court, as a matter of law, the failure to sign the form resulted in the failure to create a POD account.
The probate court also rejected the alternate theory that the money in the Atlas account kept the POD terms when the money was electronically transferred to the Wachovia accounts. The court concluded that the assertion the POD designation of the Atlas account "`governed' the terms" of the Wachovia account was a legal assertion and not a factual assertion. The probate court found that section 5303, subdivision (c), precluded this legal assertion because that subdivision provides that the withdrawal of funds from a POD account eliminates the rights of survivorship with respect to those funds.
Finally, the probate court concluded that appellant did not sufficiently plead the creation of an oral trust because she relied on the same facts alleged in support of the creation of a POD account to support the creation of an oral trust. According to the court, the intent to create one thing (a POD account) cannot be used to support the intent to create another thing (an express oral trust). The court also found that the allegations did not put Wachovia on notice that it would be the trustee of the funds.

DISCUSSION
Appellant contends that the trial court erred in sustaining the demurrer without leave to amend because she pleaded facts sufficient to survive a general demurrer. "In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. `We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff. [Citation.]" (Blank v. Kirwan (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)
Here, appellant asserts two theories about why she is entitled to the money in the Wachovia account. First, she contends that decedent intended to give the money to her through a nonprobate transfer when he asked Wachovia staff *549 to prepare POD paperwork for the Wachovia account. Second, she contends that decedent created an express oral trust when he deposited the money into the Wachovia account and asked Wachovia to hold the money for his mother and sister until his death. We examine each theory to determine whether appellant has pleaded sufficient facts to survive a general demurrer, or alternatively, whether she can amend her petition to cure any defect.

I. Nonprobate transfer

The Probate Code provides several mechanisms to transfer property outside the probate context. (See Nonprobate Transfers, § 5000 et seq.) In this case, the trial court suggested, and both parties agree on appeal, that the relevant nonprobate transfer statute at issue is the "Uniform TOD Security Registration Act" (§ 5500 et seq.) (UTSR Act), where TOD stands for "transfer on death." (§ 5505.)
Appellant's first contention on appeal is that the trial court erred when it improperly applied the parol evidence rule to find the form of the Wachovia account conclusively dispositive. According to appellant, the statute and case law on a similar nonprobate transfer statute "universally recognize" that parol evidence may be used to contest the form in which an account is held. We disagree.
(1) Our analysis necessarily begins with the statute at issue, the UTSR Act. In seeking to determine whether parol evidence is admissible to challenge the form in which an account is held, "[t]he statutory language itself is the most reliable indicator, so we start with the statute's words, assigning them their usual and ordinary meanings, and construing them in context. If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs. On the other hand, if the language allows more than one reasonable construction, we may look to such aids as the legislative history of the measure and maxims of statutory construction. In cases of uncertain meaning, we may also consider the consequences of a particular interpretation, including its impact on public policy." (Wells v. One2One Learning Foundation (2006) 39 Cal.4th 1164, 1190 [48 Cal.Rptr.3d 108, 141 P.3d 225].)
Section 5500 provides that "[t]he underlying purposes and policy of this act are to (1) encourage development of a title form for use by individuals that is effective, without probate and estate administration, for transferring property at death in accordance with directions of a deceased owner of a security as included in the title form in which the security is held and (2) protect issuers offering and implementing the new title form." (§ 5500, subd. (c).) Section 5509 provides that "[a]ny transfer on death resulting from *550 a registration in beneficiary form is effective by reason of the contract regarding the registration between the owner and the registering entity and this part and is not testamentary." (§ 5509, subd. (a).) A "beneficiary form" is defined as "a registration of a security that indicates the present owner of the security and the intention of the owner regarding the person who will become the owner of the security upon the death of the owner." (§ 5501, subd. (a).) "Register" and its derivatives mean "to issue a certificate showing the ownership of a certificated security or, in the case of an uncertificated security, to initiate or transfer an account showing ownership of securities." (§ 5501, subd. (b).) "Registration in beneficiary form may be shown by the words `transfer on death' or the abbreviation `TOD,' or by the words `pay on death' or the abbreviation `POD,' after the name of the registered owner and before the name of a beneficiary." (§ 5505.)
(2) As a result, the plain language of the statute provides that the owner of a security account is entitled to the benefit of a nonprobate transfer of the funds in the account if the owner registered the security account in beneficiary form. If the owner failed to do so, he is not entitled to a nonprobate transfer under the UTSR Act. We disagree with appellant that parol evidence suffices, by itself, to show that the owner of a security account registered the account in beneficiary form.
(3) In the context of contracts, "[t]he parol evidence rule ... `generally prohibits the introduction of any extrinsic evidence, whether oral or written, to vary, alter or add to the terms of an integrated written instrument.' [Citation.] The rule does not, however, prohibit the introduction of extrinsic evidence `to explain the meaning of a written contract ... [if] the meaning urged is one to which the written contract terms are reasonably susceptible.' [Citation.]" (Casa Herrera, Inc. v. Beydoun (2004) 32 Cal.4th 336, 343 [9 Cal.Rptr.3d 97, 83 P.3d 497].) Here, the registration of a security in beneficiary form creates a contract between the owner (decedent) and the registering entity (Wachovia Securities). (§ 5509.) Thus, parol evidence can be used to explain the meaning of a registration, but it cannot substitute for the actual registration of a security account in beneficiary form. For example, if decedent had executed the Wachovia paperwork but failed to fill out all the terms, parol evidence may be used to explain the missing terms in that paperwork. In this case, however, decedent failed to execute the paperwork, and, as a result, he is not entitled to a nonprobate transfer based upon the mere evidence that decedent had the paperwork prepared and had orally instructed the Wachovia staff about the paperwork.
Alternatively, appellant contends that decedent did properly register the security account in beneficiary form because the POD terms in the Atlas account were carried over to the Wachovia account. As an initial matter, *551 appellant limited her argument only to the funds in the Atlas account that were transferred to the Wachovia account and not to the funds transferred from the Wells Fargo account. However, the UTSR Act applies only to securities and security accounts. It does not distinguish between cash in a security account from one source and cash in the account from another source. (See § 5501, subds. (d)-(e) [defining "security" and "security account"].) Here, from the pleadings, there was only one Wachovia account. Consequently, we will analyze whether the subsequent transfer of the funds from the Atlas account into the Wachovia account transformed the entire Wachovia account into a registered account under the UTSR Act. On the record and in light of the applicable statutory provisions, we conclude that appellant has pleaded facts sufficient to survive a general demurrer.
Section 5508 provides that "[a] registering entity is not required to offer or to accept requests for security registration in beneficiary form." (§ 5508, subd. (a).) If the registering entity does offer or accepts requests for registration, section 5510 provides that "[a] registering entity offering to accept registrations in beneficiary form may establish the terms and conditions under which it will receive requests for (1) registrations in beneficiary form, and (2) implementation of registrations in beneficiary form, including requests for cancellation of previously registered TOD beneficiary designations and requests for reregistration to effect a change of beneficiary." (§ 5510, subd. (a).) Thus, under the statute, Wachovia may provide that the subsequent transfer of the funds from the Atlas account also satisfies the requirement of registration in beneficiary form because the Atlas account was registered in beneficiary form. It is possible that Wachovia does not have this policy. Nevertheless, on demurrer, we must accept appellant's factual allegations, and appellant has alleged that she "is informed, believes and thereon alleges the P.O.D. terms (or, alternatively, the Totten trust terms) were maintained as part of the transfer to Wachovia."
(4) We disagree with the probate court that this is a legal assertion, as opposed to a factual assertion. According to the probate court, it is a legal assertion because the owner of a registered security may cancel or change the registration at any time, and decedent's electronic transfer of the funds in the Atlas account was effectively a cancellation of the POD terms. Under section 5506, "[a] registration of a security in beneficiary form may be canceled or changed at any time by the sole owner or all then surviving owners without the consent of the beneficiary." However, this statutory provision does not state that the electronic transfer of the funds in an account is always a cancellation or change of the registration of that account. In any case, the analysis does not focus on the legally relevant account, which is the Wachovia account. It is a material factual allegation when appellant alleges that Wachovia treats an electronic transfer of a registered account as the registration of the Wachovia account in a beneficiary form. After discovery, it *552 may be the case that Wachovia does not treat electronic transfers in this manner. At this stage in the case, however, we conclude that the allegations sufficiently support a cause of action. We reverse the trial court's order.

II. Oral trust

Appellant also contends that she is entitled to the money in the Wachovia account because decedent intended to give her and her daughter the money through the creation of an express oral trust. We conclude that the probate court erred in its reasoning that the first amended petition did not plead facts sufficient to show that decedent had the requisite trust intent. However, in light of our reversal on the issue of the UTSR Act, we decline to address whether the probate court's order on the oral trust allegations could be affirmed on another ground.
(5) An oral trust in personal property is valid and may be proved by parol evidence. (Fahrney v. Wilson (1960) 180 Cal.App.2d 694, 696 [4 Cal.Rptr. 670]; Monell v. College of Physicians & Surgeons (1961) 198 Cal.App.2d 38, 48 [17 Cal.Rptr. 744].) To be valid, a trust, whether oral or written, must contain three elements: a trust res, the manifestation of a trust intent, and a proper trust purpose. (§§ 15201, 15202, 15203.) Under section 15207, "[t]he existence and terms of an oral trust of personal property may be established only by clear and convincing evidence." (§ 15207, subd. (a).) "The oral declaration of the settlor, standing alone, is not sufficient evidence of the creation of a trust of personal property." (§ 15207, subd. (b).) (6) According to the California Law Revision Commission comment of section 15207, subdivision (b), "delivery of personal property to another person accompanied by an oral declaration by the transferor that the transferee holds it in trust for a beneficiary creates a valid oral trust." (Cal. Law Revision Com. com., 54 West's Ann. Prob. Code (1991 ed.) foll. § 15207, p. 542.)
(7) Here, appellant has pleaded that decedent had orally declared that Wachovia hold the money in trust for his mother and sister at the same time he delivered the monies into the Wachovia account. Those allegations are sufficient to show that decedent had the requisite trust intent. We disagree that there was no trust intent because the same factual allegations used to support the registration of the Wachovia account under the UTSR Act also were used to support the creation of an oral trust. Appellant was pleading in the alternative, and many of the same factual allegations in this case could be used to support either theory. The fact that appellant had pleaded that decedent had the intent to register the security account under the UTSR Act does not preclude an alternative interpretation of decedent's actions, which is that he had an intent to create an oral trust. After discovery, appellant may be unable to prove by clear and convincing evidence that appellant intended to *553 create an oral trust. However, at this stage in the proceeding, appellant has pleaded facts sufficient to survive a general demurrer. Consequently, we reverse on this ground.

DISPOSITION
The judgment is reversed. Costs are awarded to appellant.
Hill, J., and Kane, J., concurred.
NOTES
[1] All further statutory citations are from the Probate Code, unless otherwise stated.