Filed 1/18/24  Stordahl v. Johnson CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| TIM STORDAHL,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>JERRY JOHNSON et al.,<br><br>    Defendants and Respondents. | B324765, B326356<br>(Los Angeles County<br> Super. Ct. No. 20STCV23395) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Jon R. Takasugi, Judge.  Affirmed.

Robert D. Feighner; Hitchcock, Bowman & Schacter and Robert Schacter for Plaintiff and Appellant.

Jones, Bell, Abbott, Fleming & Fitzgerald, Kevin K. Fitzgerald and Catherine L. Dellecker for Defendants and Respondents Wells Fargo Clearing Services, LLC dba Wells Fargo Advisors and Sean Bryant.

The Maloney Firm, Patrick M. Maloney, Carl I. S. Mueller and Gary A. Varnavides for Defendant and Respondent Jerry Johnson.

After opening four multiple-party bank accounts with Wells Fargo Clearing Services, LLC dba Wells Fargo Advisors (Wells Fargo), Michael Swoope designated his nephew, Richard Swoope, as a joint account holder with express rights of survivorship to each account.[1]  Before he died, Michael removed Richard as a joint account holder and designated his close friend, Jerry Johnson, in the same role.  Following Michael's death, Johnson retained the funds held in the Wells Fargo accounts.

Michael's grandson, Tim Stordahl, commenced this action against Johnson, Wells Fargo, and Sean Bryant, a Wells Fargo financial advisor named on each account, for breaches of fiduciary duty.  The operative fourth amended complaint (4AC) alleged Michael created an express oral trust in which Johnson was to hold funds in the Wells Fargo accounts as trustee and, upon Michael's death, was to distribute the funds to "relatives and certain third parties."

Stordahl appeals from the judgment of dismissal following orders sustaining demurrers to the 4AC without leave to amend.  He contends the 4AC placed at issue Johnson's statutory right of survivorship under the California Multiple-Party Accounts Law (Prob. Code, § 5100 et seq.; CAMPAL).  He also contends the 4AC adequately alleged an enforceable oral trust on which each cause of action for breach of fiduciary duty is based.

We conclude the 4AC failed to allege an enforceable trust with readily ascertainable beneficiaries.  As this pleading error is fatal to each cause of action for breach of fiduciary duty, we find no abuse of the trial court's discretion in sustaining the demurrers without leave to amend.  We affirm.

---

[1]     Michael and Richard Swoope share the same last name.  For clarity and ease of reading, we refer to Michael and Richard by their first name.

# BACKGROUND

A.    *Allegations in the Fourth Amended Complaint*

Stordahl commenced this action in June 2020. Following several rounds of pretrial motions, including a motion to quash service of summons and several demurrers, Stordahl filed the operative 4AC in May 2022. The 4AC contained various allegations pertaining to three joint tenancy brokerage accounts and one pay on death (P.O.D.) brokerage account that Stordahl's late grandfather, Michael, opened with Wells Fargo. In total, the accounts Michael opened held approximately $1.2 million.

The 4AC set forth many of the following allegations based upon information and belief. At some point, Michael designated his nephew, Richard, as the joint account holder in the joint tenancy accounts and the pay on death beneficiary in the P.O.D. account. Despite designating Richard as joint account holder or pay on death beneficiary with express rights of survivorship, Michael verbally instructed Richard to hold the funds in trust for certain relatives and other related third parties.

Prior to his death, Michael removed Richard as the joint account holder and pay on death beneficiary and replaced him with Johnson, Michael's close friend.[2] Intending to keep the funds held in the Wells Fargo accounts in trust, Michael advised Johnson "the funds in such Wells Fargo . . . accounts would be distributed to certain relatives and certain third parties outside probate administration." The 4AC further alleged Michael intended the

---

[2]    The 4AC attached various financial records as exhibits. In three joint tenancy accounts, the names of Michael and Johnson were listed with the notation "JT WROS." The parties agree this notation refers to "joint tenants with right of survivorship." (Accord, *Placencia v. Strazicich* (2019) 42 Cal.App.5th 730, 734 (*Placencia*) ["'JT WROS,' . . . appears to stand for joint tenants with right of survivorship"].)

3

Wells Fargo accounts to be held in trust "for the benefit of certain relatives and other third parties," "specific relatives and third parties," and "certain third parties." "The intent of Michael" was to have Richard, and later Johnson, act as a trustee. Michael stated these wishes to Johnson, Wells Fargo, and Bryant, a Wells Fargo financial advisor and stockbroker. Stordahl was Michael's grandson and "one of the individuals/parties for whom the funds were intended to be held in trust and to whom the funds were to be distributed."

Following Michael's death on February 13, 2018, Johnson took sole ownership of the Wells Fargo accounts and withheld funds from Stordahl "and other relatives and interested third parties." As executor of Michael's estate, Johnson filed several inventories and appraisals of probate assets in Michael's estate. The inventory and appraisals did not list the Wells Fargo accounts.

In October 2019, Johnson filed a petition for approval of settlement in Michael's estate following mediation between Johnson, Johnson's wife, and Michael's children and remaining heirs, Aimee Brennan and John Douglas Swoope.[3] The settlement agreement, attached as an exhibit to the 4AC, stated that Johnson had disclosed "all assets and liabilities of Michael . . . outside and inside of the estate . . . to all parties." The agreement provided that Johnson was "to retain the funds that were held jointly" in each Wells Fargo account.

---

[3] According to Johnson's demurrer, Brennan is Stordahl's mother.

4

B.    *The Causes of Action*

The 4AC asserted three causes of action for (1) breach of fiduciary duty and (2) resulting trust against Johnson; and (3) breach of fiduciary duty against Wells Fargo and Bryant.[4]  The first and second causes of action alleged Johnson breached a fiduciary duty to Stordahl by wrongfully retaining funds held in each Wells Fargo account.  The 4AC sought a resulting trust and a constructive trust for "the full amount of the Wells Fargo . . . accounts."

The third cause of action for breach of fiduciary duty alleged Wells Fargo and Bryant owed fiduciary duties to Michael as his financial advisors. In addition, the 4AC alleged Wells Fargo and Bryant "colluded in breaching [Johnson's] fiduciary duties, . . . so as to allow [Johnson] to wrongfully retain the funds" held in each account.

C.    *The Demurrers*

Johnson filed a demurrer to the 4AC, arguing the probate settlement and CAMPAL statutes barred both causes of action against him.  Johnson also argued the 4AC failed to plead facts establishing (1) Michael's intent to create a trust through writing, and (2) reasonably ascertainable beneficiaries of the alleged trust.

In their own demurrer, Wells Fargo and Bryant argued the 4AC failed to establish a fiduciary relationship between themselves and Stordahl. Assuming such relationship existed, Wells Fargo and Bryant argued the 4AC failed to plead a breach of duty.

---

[4]    In the trial court and on appeal, Stordahl abandoned the first two causes of action against Wells Fargo and Bryant.

5

In opposition to Johnson's demurrer, Stordahl argued the probate settlement and CAMPAL statutes did not bar his causes of action, which were based on an express oral trust. Stordahl further argued he was not required to plead facts establishing a writing evidencing Michael's intent to create a trust or to specify the beneficiaries to whom Michael sought to distribute funds.

In opposition to the Wells Fargo/Bryant demurrer, Stordahl argued he had standing to sue them as an intended beneficiary of Michael's oral trust. He also argued the 4AC adequately alleged a breach of duty by Wells Fargo and Bryant for providing Michael unreasonable advice, "which resulted in [Johnson] walking off with funds belonging to [Stordahl] and other persons." Finally, Stordahl argued Wells Fargo and Bryant had "the duty . . . not only to [Michael] but also to [Stordahl] (and 'relatives') entitled to the funds in the account."

D. *Trial Court Rulings*

Following hearings on both demurrers, the trial court sustained the demurrers without leave to amend. As to Johnson, the court found the 4AC failed to allege the creation of an enforceable trust. Absent an enforceable trust, Stordahl could not maintain either cause of action against Johnson.

The court also found the 4AC failed to allege a fiduciary relationship between Stordahl and Wells Fargo/Bryant. On any claim Stordahl could raise on Michael's behalf, the court found no allegation Wells Fargo or Bryant gave Michael bad investment advice or withheld money from Michael. Following notice of entry of each order, the court issued a written judgment dismissing the action against defendants. Stordahl timely appealed.

6

**DISCUSSION**

Stordahl contends the 4AC placed Johnson's presumptive right of survivorship at issue and alleged causes of action for breach of fiduciary duty. Before we reach the merits of these contentions, we note Stordahl offered no argument or theory on his second cause of action for resulting trust in the trial court. And while he might have provided a new argument or theory on appeal (see *Alfaro v. Community Housing Improvement System & Planning Assn., Inc.* (2009) 171 Cal.App.4th 1356, 1396), he did not do so. He has, therefore, forfeited any argument on his cause of action for resulting trust. (See *Alborzi v. University of Southern California* (2020) 55 Cal.App.5th 155, 184 [appellants abandoned several causes of action "by not addressing them on appeal"]; *Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43–44.) We limit our review to the first and third causes of action for breach of fiduciary duty.

A.      *Standard of Review*

On appeal from an order sustaining a demurrer without leave to amend, we apply a de novo standard of review to determine whether the allegations state a cause of action. (*Villafana v. County of San Diego* (2020) 57 Cal.App.5th 1012, 1016 (*Villafana*).) We assume the truth of all facts properly pleaded, judicially noticeable facts, or facts within exhibits attached to the complaint. (*Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 814; *Hoffman v. Smithwoods RV Park, LLC* (2009) 179 Cal.App.4th 390, 400 (*Hoffman*).) The plaintiff need not aver presumptions of law when pleading a particular cause of action. (*Johnson v. Clark* (1936) 7 Cal.2d 529, 535 (*Johnson*).)

"If the [complaint] is insufficient on any ground specified in a demurrer, we will uphold the order sustaining it, even if it is not the ground relied upon by the trial court." (*Villafana*, *supra*, 57 Cal.App.5th at p. 1017; see *Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 880, fn. 10 [appellate court will affirm demurrer ruling "even if the trial court relied on an improper ground"].) Where the trial court sustains a demurrer without leave to amend, the appellant must establish a reasonable probability the complaint can be cured by amendment. (*Hoffman*, *supra*, 179 Cal.App.4th at p. 400.)

B.      *Devoid of Allegations Establishing an Ascertainable Class of Trust Beneficiaries, the 4AC Failed to Allege a Breach of Johnson's Fiduciary Duty*

Stordahl contends the trial court erred by sustaining his first cause of action for breach of fiduciary duty against Johnson. He asserts the 4AC adequately pleaded an enforceable oral trust placing Johnson's statutory right of survivorship at issue *and* establishing a fiduciary relationship between Johnson and himself. Assuming Stordahl's former contention to be correct, we conclude the FAC failed to allege facts establishing an enforceable trust on which to base his claim for breach of fiduciary duty.

1. *Statutory Right of Survivorship Under CAMPAL*

In 1990, CAMPAL became the governing law for "multiple-party" bank accounts, including P.O.D. accounts and joint accounts with or without rights of survivorship. (*Estate of O'Connor* (2017) 16 Cal.App.5th 159, 165; see Fin. Code, § 1402; Prob. Code, §§ 5130, 5132, 5140.) Among the various CAMPAL statutes are provisions governing "beneficial ownership" between parties to a multiple-party account or any account beneficiaries. (Prob. Code, § 5201, subd. (a).)

8

Probate Code section 5302 governs the rights to any sums remaining on deposit at the death of a party to a multiple-party account. Subdivision (a) of this section provides: "Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intent." (See *id.*, § 5302, subd. (b) [same provisions govern survivorship rights in P.O.D. accounts].) "In other cases, the death of any party to a multiparty account has no effect on beneficial ownership of the account other than to transfer the rights of the decedent as part of the decedent's estate." (*Id.*, § 5302, subd. (d).)

Section 5302 "is the same in substance as [s]ection 6-104 of the Uniform Probate Code (1987), except that [s]ection 5302 omits the UPC requirement that the intent that there be no rights of survivorship exist 'at the time the account is created.'" (Cal. Law Revision Com. com., 53 West's Ann. Prob. Code, *supra*, foll. § 5302, p. 61.) The catchall provision "stated in subdivision (d) applies to an account where there is clear and convincing evidence of an intent *not* to have a right of survivorship." (*Id.* p. 62, italics added.) In other words, section 5302, subdivision (d) provides that whenever there is clear and convincing evidence of an intent not to have a right of survivorship, the decedent's rights become part of the decedent's estate.

### 2. *Placencia, supra,* 42 Cal.App.5th 730

Relying extensively on *Placencia*, Stordahl contends the 4AC placed at issue Johnson's presumptive right of survivorship under section 5302. The court in *Placencia* did not address the burden of pleading around this statutory right. Instead, the court inquired whether the facts in that case established clear and convincing evidence of the decedent-depositor's intent

to revoke the right of survivorship to a multiple-party account. (*Placencia, supra*, 42 Cal.App.5th at pp. 733–735.) Considering "all evidence" of the decedent's intent, the court found clear and convincing evidence of the decedent-depositor's intent to negate the right of survivorship of the joint account holder (the decedent's daughter). (*Id.* at p. 740.)

In light of this conclusion, the court then questioned how to properly dispose of the decedent's ownership interest in the account. (*Placencia, supra*, 42 Cal.App.5th at p. 742.) Finding no evidence of the decedent-depositor's intent to transfer his ownership interest out of the account, the court invoked the catchall provision in section 5302, subdivision (d). As a result, the court determined that any ownership interest in the account was subject to probate administration as part of the decedent-depositor's estate. (*Id.* at p. 743, citing Prob. Code, § 7001.)

      3.    *Assuming Johnson's Right of Survivorship Was Placed at Issue, the 4AC Failed to Allege an Enforceable Oral Trust With Ascertainable Beneficiaries*

Stordahl relies heavily on *Placencia* for the proposition his breach of fiduciary duty claim against Johnson is not barred by the survivorship rights codified in section 5302. We need not consider this contention, as we assume for the sake of argument the 4AC adequately placed Johnson's survivorship rights at issue. (See *Johnson, supra*, 7 Cal.2d at p. 535 [complainant need not aver legal presumptions].) We nevertheless conclude the 4AC failed to allege an adequate cause of action against Johnson for breaching a fiduciary duty as trustee of an alleged oral trust.

The elements of breach of fiduciary duty are (1) the existence of a fiduciary relationship from which a fiduciary duty arises; (2) a breach of that duty; and (3) resulting damages. (*Meister v. Mensinger* (2014) 230

10

Cal.App.4th 381, 395.) As alleged, the fiduciary duty at issue here is based entirely on a trustee-beneficiary relationship. In turn, this type of relationship depends on an enforceable trust. (See *Penny v. Wilson* (2004) 123 Cal.App.4th 596, 603; Prob. Code, §§ 16000, 16002, subd. (a), 16006, 16009, 16081, subd. (a).)

We agree with Stordahl "[a]n oral trust in personal property is valid and may be proved by parol evidence." (*Estate of Gardner* (2010) 187 Cal.App.4th 543, 552.) The existence and terms of an oral trust of personal property must be proved "by clear and convincing evidence. [¶] The oral declaration of the settlor, standing alone, is not sufficient evidence of the creation of a trust of personal property." (Prob. Code, § 15207, subds. (a), (b).) To plead an enforceable trust, the plaintiff must allege facts establishing (1) trust intent, (2) res, (3) trust purpose, and (4) an identifiable beneficiary or class of beneficiaries. (Prob. Code, §§ 15201–15205.)

To establish an identifiable beneficiary or class of beneficiaries, the plaintiff must plead facts establishing a beneficiary or class thereof "that is ascertainable with reasonable certainty or that is sufficiently described." (Prob. Code, § 15205, subd. (b)(1); Cal. Law Revision Com. com., 54 West's Ann. Prob. Code (1991 ed.), foll. § 15205, p. 527 [a particular "class of beneficiaries can satisfy the[se] requirements . . . if the class is ascertainable presently or in the future"].) A class of beneficiaries is indefinite "if the identity of the individuals comprising its membership cannot be ascertained." (Rest.3d Trusts, § 46, com. a, p. 204.) Depending on how the complaint pleads an alleged class of beneficiaries, "it may be impossible to determine *all* of the persons who fall within it. In such a situation, the class or group is indefinite." (*Ibid.;* § 45, com. (d) ["If it is shown that, in using the word 'relatives,' the settlor intended to create a trust for all individuals who are

11

related to the designated person, the intended class is not sufficiently ascertainable to sustain a trust"].) In such a scenario, no trust is created because "it is impossible to make [any] distribution among all of the members" of an indefinite class. (*Id.*, § 46, subd. (1) & com. (b).)

Here, we conclude the 4AC failed to allege an ascertainable class of beneficiaries, and by extension, an enforceable oral trust. As alleged, Michael advised Johnson to distribute funds held in the Wells Fargo accounts upon his death to "certain relatives and certain third parties outside probate administration," "certain relatives and other third parties," "specific relatives and third parties," and/or "certain third parties." These allegations do not sufficiently identify persons who fall within the intended class, nor do they provide any directives on how to distribute account funds to these people. (Accord, *Estate of Gaines* (1940) 15 Cal.2d 255, 258–262, 266 ["The most that can possibly be inferred from the evidence is that the decedent may have intended to create a trust [out of funds held in a joint tenancy account], for some purpose, or for someone's benefit, but failed to disclose that purpose, or the beneficiary, and therefore failed to create the trust"]; *In re Vance's Estate* (1931) 118 Cal.App. 163, 164 [same].)

*Reagh v. Kelley* (1970) 10 Cal.App.3d 1082 (*Reagh*), on which Stordahl relies, is inapposite. There, the court found a written declaration of trust sufficiently identified an ascertainable class of beneficiaries by "enumerat[ing] beneficiaries [as the decedent's son], certain named nieces and nephews, the husband and children of [decedent's niece], and any relatives of decedent, to the third degree, 'found living on the Continents of Europe, Asia and Africa within 20 years of the creation of this trust.'" (*Id.* at p. 1088.)

12

The distinction between *Reagh* and this case is significant. In *Reagh*, specific individuals (a son, nieces and nephews, and others) and a concretely defined group (relatives of the third degree living on specified continents at a particular time) comprised a class of ascertainable beneficiaries. The allegations in this case identify neither a particular individual nor a defined group. They simply refer to "certain relatives" and/or "third parties" of which Stordahl may be part.

Had Michael identified Stordahl or other identifiable persons in a manner consistent with *Reagh*, presumably by now Stordahl would have included that information in his 4AC. But he did not do that. "Indeed, the inference would be natural and reasonable that his failure arose from the want of facts rather than from lack of skill in stating them." (*Loeffler v. Wright* (1910) 13 Cal.App. 224, 232.)

Without a readily ascertainable class, the 4AC failed to allege an enforceable oral trust, and therefore failed to allege facts supporting a fiduciary relationship between Johnson as trustee and Stordahl as beneficiary. Consequently, any funds held in the Wells Fargo accounts belonged to Johnson through his rights of survivorship (Prob. Code, § 5302, subds. (a), (b)), or became part of Michael's estate subject to probate administration (*id.*, §§ 5302, subd. (d)). (Accord, *Placencia*, *supra*, 42 Cal.App.5th at p. 743.)[5]

---

[5] In light of the foregoing, we do not consider the effect of the probate action and settlement.

13

C.   *The 4AC Failed to Allege a Breach of Fiduciary Duty Claim Against Wells Fargo and Bryant*

Regarding Wells Fargo and Bryant, Stordahl contends the 4AC adequately alleged a cause of action for either (1) aiding and abetting Johnson's breach of fiduciary duty, or (2) directly breaching a fiduciary duty owed to Stordahl himself.

Our conclusion above disposes of Stordahl's first theory of recovery. Because Stordahl has not stated a cause of action for breach of fiduciary duty as to Johnson, he has also failed to state a cause of action for aiding and abetting a breach of any duty. (See *Nasrawi v. Buck Consultants LLC* (2014) 231 Cal.App.4th 328, 343 [aiding and abetting breach of fiduciary duty requires "a third party's breach of fiduciary duties owed to plaintiff"].)

We disagree with Stordahl's remaining contention as to any purported breach of fiduciary duties owing him. Stordahl identifies no allegation in the 4AC establishing any relationship, fiduciary or otherwise, between himself and Wells Fargo or Bryant. Bereft of any fiduciary relationship, Wells Fargo and Bryant owed him no fiduciary duty. (*City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 386.)

To the extent Stordahl contends he may litigate a breach of fiduciary duty claim on behalf of Michael, we disagree. "[T]he scope of [a] broker's fiduciary duty depends on the nature of the broker-customer relationship." (*Apollo Capital Fund LLC v. Roth Capital Partners, LLC* (2007) 158 Cal.App.4th 226, 245.) The FAC does not allege any fact demonstrating more than an ordinary financial advisor-client relationship between Wells Fargo and/or Bryant on the one hand and Michael on the other. As the trial court aptly noted, any obligation Wells Fargo/Bryant owed Michael ended with the disbursement of funds to Johnson under each contract of deposit. (See *Das v.*

14

*Bank of America, N.A.* (2010) 186 Cal.App.4th 727, 741 [contractual relationship with depositor imposes no implied duty on financial institution to supervise the account or "'inquire into the purpose for which the funds are being used'"]; Fin. Code, § 6661 [financial institutions must "honor withdrawal applications and shall . . . deliver the property to or upon the order of the person for whose account the property is held"].)

D.     *Leave to Amend*

Where, as here, a demurrer is sustained without leave to amend, we must decide whether there is a reasonable possibility any defect in pleading can be cured by amendment.  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) "The burden of proving such reasonable possibility is squarely on the plaintiff."  (*Ibid.*)  In so deciding, we may consider the nature of any pleading defects and previous, unsuccessful attempts to plead valid causes of action. (*Ruinello v. Murray* (1951) 36 Cal.2d 687, 690; *Tola v. Bryant* (2022) 76 Cal.App.5th 746, 756–757 (*Tola*).)

Stordahl contends he would "amend [the complaint] consistent with the assertions contained in [his appellate briefs]."  This statement is insufficient to obtain leave to amend.  (*Shaeffer v. Califia Farms, LLC* (2020) 44 Cal.App.5th 1125, 1145; *Cooper v. Leslie Salt Co.* (1969) 70 Cal.2d 627, 636.) This case has been pending for more than three and a half years with ongoing discovery.  Stordahl has received five prior opportunities to plead adequate causes of action and still has not identified facts to support his causes of action.  Even the allegations assumed to be true on appeal have been pleaded based largely upon information and belief.  Stordahl has not met his burden of showing a reasonable possibility the defects in the 4AC can be cured by a

15

fifth amendment.  (See *Tola*, *supra*, 76 Cal.App.5th at pp. 756–757.)  The court did not abuse its discretion in denying leave to amend.

## DISPOSITION

The judgment is affirmed.  Respondents shall recover their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ZUKIN, J.

We concur:


CURREY, P. J.


COLLINS, J.

16